## WATKINS VS. QUARLES & WIFE.

A testator devised the remainder of his estate, real and personal, to his wife for life, and that the balance of his slaves—after giving a temporary use of a portion of them—"shall remain upon the plantation upon which I now reside, during the life time of my wife, Mary Walker; or, in the event of her death, then to remain upon said plantation until my son, John M. Walker, shall arrive at the age of twenty-one years, at which period they, with the balance of my entire estate, to descend in equal shares to the said John M. Walker, and to my daughter, Mary Walker, and her bodily heirs, and in the event of the death of the said John M. Walker, without bodily heirs, his entire interest in my said estate, to descend to the said Mary Walker and her bodily heirs; *Held*, that the legacy to John M. and Mary Walker vested at the death of the testator, with a postponement of the possession until the time fixed by the will for a division of the property between them: and that the devise over in the event of the death of John M. without bodily heirs, is void, as being too remote—the words meaning, in a technical legal sense, an indefinite failure of issue.

*Appeal from White Circuit Court in Chancery.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

STILLWELL & WOODRUFF, for the appellant.

The first question presented is, who became entitled to the half of the slaves which we contend would have vested in John M., had he arrived at the age of twenty-one years; or, in the issue of his body surviving, had he died under that age, absolutely?

It is perfectly obvious that it was the intention of the testator, that upon the happening of a certain event, (the death of John M. Walker, without bodily heirs,) the whole of the residue of his estate, real and personal, should pass to and be enjoyed by his daughter, Mary Walker. It is well settled, that the

intention of the testator shall always prevail, unless it conflicts with some rule of law. It is also settled, that if the event must happen, within a life or lives in being and twenty-one years and nine months, the limitation over is not too remote. 3 *Ark.* 193, *Moody vs. Walker*; 1 *Salk.* 229; *and other cases there cited; Doe vs. Newel*, 4 *Maule & Sel.* 334; 1 *Jarman on Wills* 254, 255; 1 *Russ. & Mylne* 203; 7 *Term Rep.* 591; 1 *John. Rep.* 449.

In case of an immediate gift, it is generally true, that a bequest over in the event of the death of the preceding legatee refers to that event happening in the life time of the testator; but this construction is adopted from necessity, in consequence of the absence of any other period to which the words can be referred; consequently, where there is *another* point of time to which *such dying may be referred*, (as is obviously the case where the bequest is to take effect in *possession at a period subsequent* to the testator's decease, the words in question are considered as extending to the event of the legatee dying in the interval between the *testator's death and the period of vesting in possession*. 2 *Jarman on Wills, pp.* 665, 472; 1 *Roper on Legacies, pp.* 610, 611, (*ed. of* 1848); 3 *Russ.* 362; *Da Costa vs. Keir*, 2 *M. & K.* 15; 3 *same* 71; 2 *Yo. & Col.* 290.

It seems evident that the testator intended the limitation over to take effect upon the happening of the death of John M., before the time the devise to him was to take effect, *in possession*. That was not to take place until the death of Mary Walker, the mother, or his arriving at twenty-one years of age. Both must occur first. If she died before he was twenty-one, he could not take possession. If he became twenty-one in her life time, still he would not be entitled till her death.

When we say that the estate did not vest in John M. Walker, we mean the absolute right; for we admit that a conditional estate vested in him at the death of the testator. The interests of the mother, daughter and son, such as they were, vested at the same time. 1 *Roper on Legacies* 403, *etc.*, (*ed.* 1829.)

The vesting of an absolute estate in John was postponed

until he arrived at twenty-one years of age, if, as it turned out, he survived his mother.

The rule is, that where a legacy is given to one, to be paid or payable at or when he shall attain the age of twenty-one, or any future definite period, the legacy is considered as vested. 1 *Roper on Legacies*, 376, 7, 8, 9 10, (*ed.* 1829.)

But the words paid or payable are material, and if they are omitted, and the bequest is to the legatee, *provided*, *in case of*, *or when*, he attains the age of twenty-one, etc., the legacy does not vest till the legatee attains twenty-one. 1 *Roper on Legacies*, 383, 4, 5, 6, 7, 8, 9, 390, (*ed.* 1829), where a number of adjudicated cases are referred to. 11 *Wendell's R.* 272, *Patterson vs. Ellis*.

John M. Walker's arriving at the age of twenty-one, was a condition precedent to the vesting of an absolute estate in him. 4 *Kent's Com.* 122, 123, 124, 125; 1 *Roper on Legacies*, 501, 502, (*ed.* 1829); 1 *Jarman on Wills*, 797, 798, 799, 800.

Mary's interest in the moiety that would have been vested in John absolutely, on his arriving at the age of twenty-one, was *a contingent remainder*. 4 *Kent's Com., pp.* 206, 207, *and notes*.

FAIRCHILD for the appellees.

There being no devise to trustees or to executors, to hold the title for those for whom the estate was intended, if disposed of at all by the will, it was the property of those for whom the will was trying to provide; between whom it was to be divided, after remaining upon the plantation till the prescribed period of division; that is, the property was fully vested in Mary Walker, the daughter, and in John M. Walker, though the individual possession thereof was deferred to John M. Walker's majority. At the death of Mary Walker, one-half of the whole estate of James Walker, not specifically devised by the second and third items of the will, was vested in John M. Walker, though the division of the property, and exclusive enjoyment thereof, was deferred till he should be twenty-one years old. *May vs. Wood,* 3 *Bro. C. C.* 473; *Dawson vs. Killett,* 1 *Bro. C.*

*C.* 123; *Monkhouse vs. Holme, Ib.* 300; *Prrker vs. Hodgkinson,*
15 *Sim.* 295.

It is manifest from, the whole will that the residue of the
estate, all but that included in the second and third items of
the will, was intended by James Walker to go to Mary Walker,
the daughter, and John M. Walker.

The time of division was delayed, not because John was not
to have the estate, not because he did not have an interest in
it, but for the convenience of the estate, and all concerned in
it.    And in such case the rule is, that the vesting dates from the
gift, not from the time its use is to be given, or it is to be sur-
rendered to the legatee.    *Hanson vs. Graham,* 6 *Ves.* 247; *Par-
ker vs. Sowerby,* 21 *Eng. Law & Eq. R.* 42, 43; *Birdsall vs.
Hewlett,* 1 *Paige* 34; *Bayley vs. Bishop,* 9 *Ves.* 11; *In re Dodg-
son's Trust,* 21 *Eng. L. & E.* 259; *Perry vs. Rhodes,* 2 *Murphy's
Law & Eq. R.* 140; *Barnes vs. Allen,* 1 *Bro. C. C.* 182; *Booth
vs. Booth,* 4 *Ves.* 403; *Blamire vs. Geldart,* 16 *Ves.* 314; *Leeming
vs. Sherralt,* 2 *Hare* 20.

It is submitted that the foregoing authorities establish the
proposition, that the interest of John M. Walker in the general
residue of James Walker's estate, was an interest in remainder,
dependent upon, and to be preceded by the life interest of Mary
Walker, the mother, but one that vested with the life interest;
which, with the remainder to John and Mary Walker, the
daughter, made up the entire estate as owned by James Walker
and devised by him.

The fifth item of James Walker's will closes in these words:
" and in the event of the death of the said John M. Walker,
without bodily heirs, his entire interest in my estate to descend
to the said Mary Walker and her bodily heirs."

And my proposition upon this clause of the will is, that the
attempt to pass John M. Walker's share in the estate in the
event of his death without bodily heirs, over to Mary Walker,
is void for two reasons; because the limitation over is too
remote; and because it is in opposition to the absolute interest
given to John M. Walker.

The limitation over to Mary Walker is upon an indefinite failure of issue, and is therefore void. *Moody vs. Walker*, 3 *Ark.* 189, 198; *Patterson vs. Ellis*, 11 *Wend.* 272, 292; *Biggs vs. Bensley*, 1 *Bro. C. C.* 190; *Exel vs. Wallace*, 1 *Ves.* 117, 120; *Barlow vs. Salter*, 17 *Ves.* 481, 482; *Elton vs. Eason*, 19 *Ves.* 80; *Blagrove vs. Hancock*, 16 *Sim.* 276; *Miller vs. Macomb*, 26 *Wend.* 229; *Doe vs. Ellis*, 9 *East.* 382; *Glen vs. Strothoff*, 2 *Bro. C. C.* 27; *Butterfield vs. Butterfield*, 1 *Ves.* 134; 4 *Kent.* 273, 281, 282.

And, even if the clause of limitation over of John M. Walker's share, in the event of his death without bodily heirs, could have restricted an interest in lands from an absolute to an entailed estate, it would not so operate on personal property, it always having been the law that such words as confer an estate tail in lands, pass the whole interest in personal property. *Chandless vs. Price*, 3 *Ves.* 101; *Crooke vs. De Vandes*, 9 *Ves.* 203; *Foley vs. Burnett*, 1 *Bro. C. C.* 284, 285; *Maulding vs. Scott*, 13 *Ark.* 91.

And whenever a testator has given away his whole interest, he cannot give any more. Any attempt at further control of the thing given, is repugnant to the gift, and therefore void. *Flanders vs. Clark*, 1 *Ves.* 10; *Bradley vs. Peixotto*, 3 *Ves.* 325; *Jackson vs. Bull*, 10 *Johns.* 20.

But this will not abate the first, the absolute gift; that, of course, remains good. *Blease vs. Burgh*, 2 *Beavan* 226; *Ring vs. Hardwick, ib.* 359; *Hulme vs. Hulme*, 3 *Sim.* 650; *Green vs. Harvey*, 1 *Hare* 431.

However fruitless it may be to speculate upon the intention of testators in using words which courts hold mean an indefinite failure of issue, the remarks of Chancellor Kent are applicable in this case, as it seems to have been the plain meaning of James Walker to provide for John M. Walker and his bodily heirs, and that until such heirs had ceased to exist, however remote that time might be, Mary Walker, the daughter, and her bodily heirs, were not to enjoy John M. Walker's share of his estate. *Anderson vs. Jackson*, 16 *Johns.* 400, 401; 4 *Kent*

274. Also, *Pleydell vs. Pleydell*, 1 *P. W.* 750. But whatever may have been James Walker's intention, it cannot prevail over the law.

Mr. Justice COMPTON delivered the opinion of the Court.

James Walker died, in the early part of 1852, leaving a wife, Mary Walker; a daughter, Mary Walker, then wife of Alexander S. Walker; a son, John M. Walker, and a grand-daughter, Emily Sophronia Walker, only surviving child of Crawford Walker, a deceased son of James Walker.

A short time before his death, James Walker made a will, in which, after appointing Alexander S. Walker and Mary Walker the wife of the testator, executor and executrix, he devised his entire estate as follows:

" Second. I give and bequeath to my grand-daughter, Emily Sophronia Walker, minor heir of my son, Crawford Walker, deceased, certain negroes, slaves for life, which slaves are sev-erally named and described in a certain deed of gift made by me, and bearing date of 13th day of July, A. D. 1849, and which deed of gift is now duly recorded in the recorder's office of said county of White, in Record Book D, pages 96, 97, 98, 99.

" 3. To my executrix and executor, I give full power and authority to sell and convey certain tracts of land now owned by me, to-wit: The one lying on the Arkansas river, in the county of Pulaski, and State aforesaid, containing 456 acres, or thereabouts; one lying in said county of White, and State afore-said, and being about three miles south, or south-west, from the town of Searcy, containing 240 acres, commonly known as the branch or spring land; the other is one-half the interest in the undivided north half of section 12, in township 7, north of the base line, in range 7, west of the fifth principal meridian; and in the event of the death of my wife, the said Mary Walker, who is the executrix herein named, previous to effecting the sale of the said tracts of land above named, I give my execu-tor, Alexander S. Walker, full power and authority to sell and

convey the same, and after the same is so sold, the proceeds thereof to be equally divided between my said wife and Alexander S. Walker, and my son, John M. Walker; or in the event of the death of my said wife, previous to said sale being effected, then the proceeds thereof to be equally divided between Alexander S. Walker and John M. Walker, each to share and share alike.

" 4th. The remainder of my estate, both real, personal and mixed, I give and bequeath to my wife, Mary Walker, during her life. Nevertheless, that the slaves which I have placed in the care of, and under the control of Alexander S. Walker and Mary, his wife, which are described as follows, to-wit: Rachel, aged about 50 years; Dick, a man, aged about 30; Ann, his wife, aged about 22; Louis, a boy, aged about 3 years; Jacob, aged about 1 year; Frank, aged about 17 years; Clara, aged about 16 years; Robert, aged about 24 years; Henry, aged 12 years; and Rachel, a girl, aged about 10 years, shall be, and remain, in possession of the said Alexander Walker and Mary, his wife; and that they have all the benefit arising from the labor of said slaves, until there shall be a general division of my said estate, which is hereinafter mentioned, at which time they shall revert back, be and constitute a part and parcel of said estate.

" 5th. That the balance of my slaves shall remain upon the plantation upon which I now reside, during the lifetime of my wife, Mary Walker; or in the event of her death, then *to remain upon said plantation until my son, John M. Walker, shall arrive at the age of twenty-one years, at which period they, with the balance of my estate, to descend in equal shares to the said John M. Walker, and to my daughter, Mary Walker, and her bodily heirs; and in the event of the death of the said John M. Walker, without bodily heirs, his entire interest in my said estate to descend to the said Mary Walker and her bodily heirs.*

" 6th. And at the death of the said Mary Walker, her entire interest in said slaves to descend to her bodily heirs, with an equal and child's part to her husband, Alexander S. Walker,

(provided he survives her,) during his natural life; and at the death of the said Alexander S. Walker, said slaves to descend in equal shares to the bodily heirs of the said Alexander S. and Mary Walker, his wife. In testimony," etc.

The writing referred to in the second item of the will, as a deed of gift, was a declaration on the part of James Walker, that certain slaves, therein mentioned, had been loaned to Crawford Walker, then dead, and it covenanted that he would stand seized of, and hold them in trust for Louisa Walker, the widow of Crawford Walker, and for Emily Sophronia Walker, the child of Crawford and Louisa Walker. Upon the death of Louisa Walker, and the death of Emily Sophronia Walker, without lawful issue, the slaves named were to revert to James Walker; and it was the revertionary interest only which the will gave to Emily Sophronia Walker—all previous and other interest having passed out of James Walker by the instrument referred to, which was dated the 13th day of July, 1849.

In April, 1852, which was but a short time after the death of James Walker, Mary Walker, his wife, died; and in April, 1854, John M. Walker, the son, died, lacking some months of being twenty-one years of age.

Upon these facts, Emily Sophronia Walker, a minor, by her mother and next friend, Louisa Walker, filed her bill on the chancery side of the White circuit court, in which she claimed that, after deducting the lands mentioned in the third item of the will, one-half of the whole estate of James Walker, upon the death of Mary Walker, his wife, passed to John M. Walker, as his absolute property; and that upon his death, as aforementioned, without having been married, and without a will, one-half of his property vested in his sister, Mary Walker, and the other half in herself, she being the only child of Crawford Walker, a deceased brother of John M. Walker; or else, that as to the residue of James Walker's estate, after taking out the three tracts of land mentioned in the second item of the will, he, the said James Walker died intestate, in which event she claimed one-third such residuary estate; and upon the death

of John M. Walker, one-half of his third, making one-half of the whole residuary estate. But in this event she conceded her liability to bring into the general distributable fund, the slaves described in the instrument referred to in the second item of the will, and offered to do so.

Pending the suit, Louisa Walker, the next friend of the plaintiff, died, and she the plaintiff, married Pichegru T. Quarles, and he and his wife were admitted to prosecute the suit as plaintiffs. Alexander S. Walker also died, and the suit abated as to him, Mary Walker, his widow, married Thomas Watkins, who appeared to the suit and was made a defendant. Mary Watkins then died, leaving her husband and two infant children, Alexander S. Walker, by her husband Alexander Walker, and Mary J. Watkins, by her last husband, Thomas Watkins. These infants were made parties to the suit, and defended by their guardian *ad litem*, Thomas Watkins. Shortly afterwards, the infant, Alexander S. Walker, died, leaving his half sister, Mary J. Watkins, his only heir. Mary J. Watkins, the other infant, then died, leaving her father, Thomas Watkins, her only heir. The suit was thenceforward prosecuted against Thomas Watkins, as sole defendant, he, as such heir at law and distributee, having succeeded to all the rights and interests of the deceased infants, so far as concerned the personal property claimed by the bill. As to the real estate, it was agreed between the parties that the whole of it, upon the death of the infants, vested in the plaintiff, Emily Sopronia Quarles, leaving the personal property as the only subject matter of controversy.

On the final hearing, the court below was of opinion that the residuary bequest to John M. Walker, the son, and Mary Walker, the daughter, never vested—John M. Walker, having died under the age of twenty-one—and that upon the death of Mary Walker, the wife, and of John M. Walker, the son, the whole estate of James Walker, real and personal, except the three tracts of land mentioned in the third item of the will, was descernible and distributable as though he had died intestate; and decreed accordingly.

To ascertain and settle the rights of the parties, two questions are to be determined: 1st. Whether the residuary bequest to John M. and Mary Walker, vested at the death of the testator; and if it did, 2d. Whether the limitation over of John M's share to Mary, was upon an indefinite failure of issue, and therefore void.

Where the gift of a legacy is absolute, and the time of payment only is postponed, as where a sum of money is given to A, to be paid when he shall attain the age of twenty-one, the time not being of the substance of the gift, postpones the payment, but not the vesting of the legacy; and if the legatee die before the period specified, his representatives are entitled to the money. Where, however, the legacy is given, *if, at, or when* the legatee shall attain the age of twenty-one, or in language of like import, time is of the substance of the gift, and the legacy does not vest until the contingency happens. But, although the terms in which a legacy is given be such as, standing alone and unexplained, would prevent it from immediately vesting, yet if from the context of the will it appears that a condition precedent to its vesting was not intended, but that the words importing a condition were merely employed to designate the period when the legacy should be received or enjoyed, that sense is put upon the words which the will requires.

This principle is illustrated by a variety of adjudications, though we need refer to those only which bear more directly on the case under consideration, and in which it has been held, that where an intermediate interest in the property bequeathed is carved out, and given to another person, beneficially, until the legatee shall arrive at a particular age, and when he attains to it, the property is directed to be transferred to him: Or, where the property, or its intermediate interest, is given to executors or trustees to answer particular purposes, as to pay debts and the like, with direction that the legatee shall have the property *after* they are paid: or where the intermediate interest is given to another person for life, and after

his death to the legatee:—the person, in all such cases, to whom the absolute property is limited, will take an immediate vested interest in the subject, that is, the interest of the first and subsequent takers vest together; for, it is said to be clear, notwithstanding the words of condition, that the testator intended to give immediately the property to the person in remainder, with a postponement of the enjoyment only, until he attained to a particular age, or until the particular purposes were answered, or so long as the tenant for life continued to live. Thus, in *Lane vs. Goudge*, 9 *Ves.* 225, where an annuity was bequeathed to *Naomi Ivey*, for life, remainder to James Lane, until his second daughter attained twenty-one, and then to her absolutely, it was held that the legacy vested in the daughter at the death of the testator. And, where the testator devised lands to his wife till his son attained twenty-one, and when his son arrived at that age, then to him in fee; and the son died under twenty-one, the Lord Chancellor decided that the son took a vested remainder. *Mansfield vs. Dugard*, 1 *Eq. Ca. Abr.* 195; *cited in Roper on Legacies*, (*second American from the fourth London edition,*) *pg.* 582. So in *Johnson vs. Baker*, 3 *Murp.* (*L. & E.*) 318, the testator gave to his wife all the property he received with her; and the rest of his estate he gave her until his son should come to lawful age, *when* the same should belong to him; and, in the mean time, directed that his son be maintained and educated at a reasonable expense out of his estate, in proportion to the value of all the property and its general profits and income. The widow died leaving her son surviving, who died before he attained the age of twenty-one; held that the legacy to the son vested at the death of the testator. To the same effect are the cases of *Perry vs. Rhodes*, 2 *Murph.* (*L. & E.*) 140; *Taylor vs. Biddall*, 2 *Mod.* 289; *Hanson vs. Graham*, 6 *Ves.* 239. The rule, that where the property is given intermediately to the executor for the accomplishment of particular purposes, the payment only and not the vesting of the legacy is postponed, was laid down in *Boraston's case*, 2 *Coke's Rep.* (*by Thomas,*) 51. There, the devise was to a man

and his wife for eight years, and after that term, the lands were to remain to the executors of the devisor for the performance of his will, until such time as Hugh Boraston should, accomplish his full age of twenty-one years; and when he should come to his age, of twenty-one, *then* to him, his heirs and assigns forever. Hugh Boraston died under twenty-one, and it was contended that the remainder was not to vest in him, unless he attained the prescribed age; but the court of *King's Bench* determined that the remainder vested at the death of the devisor, with the postponement of the possession until Hugh completed the age of twenty-one—the case being, it was said, nothing else in effect than a devise to the executors until Hugh attained the age of twenty-one, remainder to him in fee.

Indeed, as all the cases show, the great object to be ascertained in the construction of a will is the intention of the testator, which, when it is discovered, will always prevail if not inconsistent with some settled rule of law; and the rules above referred to, as well as all others on the subject, have been established as tending to that end.

Under the fourth item of the will in the case before the court, the testator devised the general residue of the estate to his wife for life, with the exception of ten negroes then in the possession of Alexander Walker and Mary, his wife, who were to keep them in possession and have the benefit of their services until there should be a "general division" of the testator's estate, when they were to revert and constitute a part of the estate.

By the term "general division," here used, the testator clearly had reference to that disposition of the property to his children, John M. and Mary, provided for in the fifth item of the will. In that item he directed that the balance of the slaves should remain upon the plantation on which he then resided, during the life time of his wife; or in the event of her death, until John M. should arrive at the age of twenty one, at which period, they, with the entire residue of his estate, should "descend in equal shares" to the said John M. and Mary; and in

the event of the death of John M. " without bodily heirs," that his entire interest should " descend " to Mary.   Here, an intermediate interest—the labor of the slaves mentioned in the fourth item of the will—was carved out of the property devised, and given to Alexander S. Walker, and Mary, his wife, for the full period of postponement, that is, until the death of the testator's wife, or until John M. should attain the age of twenty-one, if she should die before he arrived at that age; while out of the rest of the property devised, an intermediate interest was also carved, and given to the wife of the testator for life—and though this latter interest might determine before John M. attained the age of twenty-one, nevertheless, the slaves were to remain on the plantation of the testator until that time, when the *whole* of the property given under the fourth and fifth items of the will, was to " descend " to John M. and Mary.

Upon this state of case, and in view of the principle that legacies are always to be considered as vested unless the intention of the testator is manifestly otherwise (*Coobin vs. Wilson*, 2 *Ash.* 178; *Eldrege vs. Eldrege*, 9 *Cush.* 516,) the authorities above cited fully sustain us in holding—as we do—that the legacy to John M. and Mary Walker, vested at the death of the testator, with a postponement of the possession only until the time fixed by the will for a division of the property between them, in order to let in the intermediate interests carved out; as also to effectuate the express direction and purpose of the testator, that a part of the slaves should remain together upon the plantation—a provision for the convenience of the estate and the interest of those who were to get it—until the time when such division was to be made.   Furthermore, to decide that the legacy in question was not to vest until John M. attained the age of twenty-one, would be to say that although the testator made a will by which he undertook to dispose of his entire estate for the benefit of his children, he nevertheless intended to die intestate as to the residue—which was the greater portion thereof—unless John M. should attain that age. Treating the question as one of intention, such a proposition

would be most unreasonable. It was the intention of the testator that John M. and Mary, his only surviving children, should have the entire residue of his estate ultimately and at all events. The only contingency connected with the bequest was that in the event of the death of John M. without bodily heirs, his interest was to divest and vest in Mary and her bodily heirs; and whether the intention of the testator, in this respect, can be carried out, is the remaining question to be determined.

The doctrine of executory devises was elaborately discussed by this court in *Moody vs. Walker*, 3 *Ark*. 146, and the conclusion reached, as regards the point we are now considering, is supported by the decided weight of English and American authorities. It is there said that the words " dying without heirs lawfully begotten of the body," or of like import, mean, in a technical legal sense, an indefinite failure of issue, that is, a failure of issue whenever it shall happen, sooner or later, without any certain or definite period, within which it must occur; or, in other words, they mean the period when the issue or descendants of the first taker, shall become extinct; and that if an executory devise be limited to take effect after a dying, without heirs lawfully begotten of the body, or words of like meaning, the limitation over is void as being too remote and founded on an indefinite failure of issue; though in such cases, the courts, in order to sustain the limitation over, will lay hold of any expressions in the will by which the general language is restrained, and a definite failure of issue indicated, as a failure of issue at the death of the first taker, or at any other definite point of time within the period in which a limitation by way of executory devise may lawfully vest, which is a life or lives in being, and twenty-one years and nine months.

In the case now before the court, the words are " and in the event of the death of the said John M. Walker, without bodily heirs, his entire interest in my said estate to descend to the said Mary Walker and her bodily heirs." There being no words in the will to restrain this general language, it is clearly a limita-

tion over upon an indefinite failure of issue within the meaning of the rule in *Moody vs. Walker*, *supra*, and is void.

The decree is reversed and the cause remanded, with instructions to the court below to decree to the plaintiffs, in right of Emily Sophronia Quarles, one half of the slaves and personal property bequeathed to John M. Walker, under the fourth and fifth items of the will of James Walker, together with the reasonable hire of the slaves from the date of Thomas Watkins' intermarriage with Mary Walker—the parties paying each one half the costs in this court and in the court below.

Mr. Justice FAIRCHILD did not sit in this case.