BLANTON v. FIRST NATIONAL BANK OF FORREST CITY.

Opinion delivered March 1, 1920.

1. WILLS—"USE AND CONTROL" OF MONEY.—Where a will left half of the estate to the testator's widow and the other half to his children, the widow to have the use and control of the latter half until the children became of age, a bank incurred no liability in allowing the entire funds of the estate on deposit with it to be expended by the widow, so long as it did not participate in any breach of trust resulting in misapplication of the funds.

2. WILLS—"USE AND CONTROL" OF MONEY.—Where a will left money to the testator's children, with the right in the widow to have the "use and control" thereof during their minority, the widow was entitled to enjoy the use thereof for her own purposes, according to her pleasure and necessities.

Appeal from St. Francis Chancery Court; *A. L. Hutchins*, Chancellor; affirmed.

*C. W. Norton*, for appellants.

To recover, plaintiffs must show (1) receipt of the money by the bank, with knowledge of its trust charac-

ter; (2) appropriation or conversion by the bank of the fund to a purpose contrary to the trust, as in this case, by a credit to the individual account of Mrs. Evans and by allowing same to be checked out until exhausted; (3) that no settlement has been received by the wards from the guardian or any other person for this fund. The law of this case is settled in the former appeal. 136 Ark. 441. Mrs. Evans' testimony is positive that both checks were delivered by Mr. Hughes to Eugene Williams to be deposited in the Bank of Forrest City. A ward can follow trust funds into the hands even of third parties with knowledge. 12 R. C. L. 1172. The testimony is undisputed that no settlement has ever been had by the wards for this fund or any other that went into the guardian's hands.

*R. J. Williams* and *Mann, Bussey & Mann,* for appellees.

1. On the first appeal (136 Ark. 441) this court settled the law of this case. By the express terms of the will, Mrs. Evans was entitled to the use and control of "all the estate belonging to these children." The term "use" means to make use of—to convert to one's own service, and is synonomous with enjoyment and benefit. 39 Cyc. 845; 111 U. S. 202; 72 Ga. 482; 52 N. E. 599. The word "use" in a will to a wife creates a life estate. 7 Ohio Ct. Ct. 426. The gift to Mrs. Evans was absolute and not for the benefit of the children and no requirement was made to account for rent and profit, and she was entitled to draw it from the bank at will. Even if the bank had knowledge, the bank would not have been warranted in declining to allow Mrs. Evans to draw on the fund. The testator not having placed any limitation on the use of the property by the wife, the courts can not.

2. Plaintiffs have received the benefits of the estate. The burden was on them to show that Mrs. Evans was indebted to them in at least an amount equal to the amount sued for. The proof shows that plain-

tiffs were not entitled to the amount claimed in the complaint. Eugene Williams was not acting for the bank but for Mrs. Evans and notice to him was not notice to the bank. 107 Ark. 232. A trustee with full control over trust funds in a bank can draw such funds *ad libitum* and the bank incurs no liability if it does not participate in the breach of trust. 107 Ark. 232; 135 *Id.* 291. The complaint was properly dismissed.

WOOD, J. This is a consolidation of two separate causes of action begun by the appellants against the appellees.

The purpose of the action, as set forth in the complaint, was to recover from the appellee bank the sum of $1,070.67, which it was alleged had been delivered to the cashier of the bank to be placed to the credit of Mrs. Mary E. Evans, as guardian; that the cashier, knowing that the money belonged to appellants, wrongfully placed the same to the credit of Mrs. Mary E. Evans, individually, instead of to her credit as guardian, and allowed her to check it out for her personal use.

Appellee Rolfe was president of the appellee bank, and judgment against him was asked because it was alleged that he had failed to file the statement required by section 848 of Kirby's Digest. This is the second appeal in this case.

On the first appeal we held that the facts alleged in the complaint stated a cause of action, and the cause was reversed and remanded with directions to overrule the demurrer to the complaint. *Blanton* v. *Nat. Bank,* 136 Ark. 441.

In holding that the facts alleged in the complaint constituted a cause of action, in the course of the opinion we quoted from 12 R. C. L. (p. 1172) as follows: "On the same principle the ward can follow any other property wrongfully disposed of by the guardian into the hands of third parties, if they had knowledge of such facts as should have put them on inquiry; if, for instance, they had received in payment of a debt of the guardian

funds standing in the name of the ward. * * * It is beyond the power of a guardian or other trustee to bind the estate he represents to any use of its funds by contract with third persons who have knowledge of the character of the property transferred, except in the ordinary and usual course of administration of the trust, and in furtherance of its object. This particularly applies to banks in which funds have been deposited, which by the form of the deposit or otherwise they know to be trust funds, but permit to be transferred to the guardian's personal account or applied to his individual debt.''

We further said, ''If the funds so received were, notwithstanding the conversion to the individual account of the guardian, used by the latter for the benefit of the respective wards, or if the funds so misappropriated were subsequently accounted for by the guardian and reappropriated and held to the use of the wards, that would be a matter of defense which can be shown in this action by the appellees, but the parties are not bound to go first to the probate court for the adjustment of the accounts, inasmuch as all of the defenses can be heard in the present action.''

Upon a remand of the cause the appellees answered, denying specifically all the material allegations of the complaint. They alleged that the funds in controversy were derived from the estate of James P. Blanton, deceased, the father of appellants; that, under the terms of his will, Mary E. Blanton acquired one-half of his entire estate and the appellants one-half, or one-fourth each; that the will of Blanton contained the following provisions: ''It is expressly understood that my said wife, Mary E. Blanton, shall have the use of and control of said portions of said estate that I have hereinbefore bequeathed to my said son, John Cecil, and my daughter, Annie Mabel, until the said son and daughter become of age, respectively, at which time my said wife shall pay to my said son his portion of my said estate and to mv said daughter her portion of said estate.''

The funds in controversy were a part of the proceeds of a debt which the attorney for the Blanton estate had collected from the Davis estate. The amount collected was $1,606.

W. W. Hughes, the attorney for the Blanton estate, paid to Mrs. Mary Blanton Evans the sum of $535.33, as representing her one-third interest and paid to her as guardian the remaining two-thirds, $1,070.67. These amounts were paid by checks. The check for the interest of appellants recited: "Pay to the order of Mrs. Mary E. Blanton Evans, guardian, etc." The checks were drawn on the Bank of Eastern Arkansas of Forrest City and on the back of each of them was a cancellation stamp showing that they were paid by the Bank of Forrest City, March 24, 1913.

Mrs. Evans testified, in part, as follows: That the checks drawn in her favor by Mr. Hughes were delivered by him in his office to Mr. Williams, cashier of the Bank of Forrest City; that they were delivered to be deposited in the Bank of Forrest City. She did not endorse the checks before they were handed to Mr. Williams. She further testified that the money was deposited in the Bank of Forrest City in March, 1913; that her checks drawn against her account shortly after the deposit of this fund were refused with the statement by the cashier that she had no money there.

She further testified that neither she nor the appellants had received any money from the Bank of Forrest City or the First National Bank (its successor) since the deposit was made in March, 1913; that the living for herself and children had been provided by her husband, Mr. Evans, and her son, Cecil; that no settlement had ever been had by her with her wards for this fund or for any other property that went into her hands as guardian.

It was proved that the indorsement of "Mrs. Mary E. Blanton Evans, guardian," on the back of the check was made by Eugene Williams, the cashier of the Bank of Forrest City. It was also proved that no proceedings

were had in the guardianship of Mrs. Mary Blanton Evans after the grant of letters in May, 1909.

The testimony in the whole record is exceedingly voluminous, and we will, therefore, not undertake to set it out in detail, but the above is the essential testimony upon which the appellants rely. On the other hand, the testimony for the appellees tends to prove that after the death of James P. Blanton, Mrs. Blanton, his executrix, took charge of his estate and handled the same, collecting the rents and other personal assets, and opened up a general account in her individual name with the Bank of Forrest City.

The itemized statement of the account which is in evidence shows that during the time there were many debits and credits. The final balance showing that a sum total of $17,110.19 was deposited and that this sum was drawn out by checks. One of the items on the statement is March 24, 1913, $1,606 deposited, with the word "Davis" written in pencil opposite the entry.

The account shows that at the time the above deposit was made the account of Mrs. Evans was overdrawn $710.88. After the deposit there was a balance in her favor of $895.12. Mrs. Evans continued to check on her account, drawing out the full amount of this deposit and the sum of $718.65, later deposits, showing that on September 22, 1913, as above stated, the checks and deposits balanced.

By the terms of the will of J. P. Blanton, Mrs. Mary E. Blanton was given in her own right one-half of his entire estate and the right to use and control the portions of the estate that were bequeathed to her children.

Mrs. Blanton had taken charge of the estate under the terms of the will so that in reality when the attorney came to pay over to Mrs. Evans the amount collected by him for the Blanton estate from the Davis estate, he made the checks to read that Mrs. Mary Blanton Evans was entitled to only the sum of $535.33, whereas under the terms of the will she was entitled at that time to $803 of such fund, whereas, the amount to be paid her as guard-

ian of the children would have been a like sum.   So it is manifest when the provision's of the will are taken into consideration that the attorney made out these checks without reference to the will, supposing that Mrs. Evans was only entitled to one-third.

So the making of the checks to read as above set forth could not have given the appellants any greater rights in the estate than they really had under the terms of the will.   At the time, therefore, when Mrs. Evans deposited the full sum of $1,606 in the Bank of Forrest City she in her individual right was entitled to the sum of $803, or half of the deposit. . Her account was overdrawn at that time in the sum of $710.88.   Now, although the bank had knowledge, through the knowledge of its cashier, Williams, that a part of the funds deposited were trust funds, nevertheless, the bank did not, as the proof shows, permit her to convert a portion of this fund to her own use in the payment of her overdraft in the bank.   If the bank was put upon inquiry and was bound by the knowledge that an inquiry would have obtained, then it would have ascertained that Mrs. Evans had possession of the funds as executrix of the estate of her deceased husband, Blanton, and that she was entitled to one-half of these funds in her own right, and that after paying out of her half the overdraft she still would have had the sum of $93.12 of the funds which belonged to her.

Furthermore, the bank would have ascertained that the will of Blanton provided that his wife, Mary E. Blanton, should have the "use of and the control" of such portions of his estate as were bequeathed to appellants. "Where a trustee has full control over the funds deposited in a bank, he may draw them out of the bank *ad libitum*, and the bank incurs no liability in permitting this to be done, so long as it does not participate in the breach of trust, resulting in the misapplication of the funds." *Bank of Hartford* v. *McDonald*, 107 Ark. 232-40.

The law announced in our former opinion is the law of this case as applicable to the facts set forth in the complaint, but the facts developed by the testimony at

the hearing on the merits were as we have set forth above.

These facts clearly show that there was no misappropriation of the funds by Mrs. Blanton. Although the funds were deposited in the bank in her own name, since she had absolute dominion over the same by the terms of the will until her children became of age, and as that period had not arrived at the time of the deposit, the bank incurred no liability in allowing them to be deposited to her individual credit.

While under the will Mrs. Blanton did not have the absolute title to the funds, yet she did have the right to avail herself of the funds and to enjoy the use of them for her own purposes according to her pleasure and necessities. Such right was bestowed by the words "use" and "control," giving the same their plain and ordinary meaning. See Webster's Dict.; 39 Cyc. 845; Words & Phrases, p. 7228.

The language of the will did not place any restrictions upon Mrs. Blanton in the use of the property and the bank would not be chargeable with knowledge of any improper use that she might make of it. But aside from all this, the testimony tends to prove that Mrs. Evans did not make any illegal or improper use of the appellants' estate. On the contrary, the testimony shows that the appellants lived with their mother and that they all drew their support and maintenance from the same fund.

The appellants failed to prove their cause of action. Therefore, the decree of the court dismissing their complaint for want of equity is correct.

Affirmed.