OWEN v. DUMAS.

4-5907 140 S. W. 2d 101

Opinion delivered May 13, 1940.

*Ezra Garner,* for appellant.

*Stevens & Cheatham* and *Whitley & Utley,* for appellee.

MEHAFFY, J. On September 1, 1938, appellant, W. E. Owen, filed his petition in the Columbia chancery court to quiet his title in the SE¼ of section 18, and the west ½ of the SE¼ of section 17, all in township 18 south, range 20 west. The suit was originally against Elza Dumas and Eddis Dumas, his wife, Ernest Dumas and Eursel Dumas, his wife, and Manson Dumas, a single person. An amendment was filed to appellant's petition on September 16, 1938, making M. S. Owen and Ivie Owen, his wife, defendants. It was alleged that E. L. Owen departed this life in 1912 and at the time of his death was the owner of the above described lands; that under and by virtue of the last will and testament of E. L. Owen, deceased, said lands were bequeathed to Louisa Frances Owen, widow of E. L. Owen, deceased, as trustee with full power as such trustee to dispose of the said property and to make title deeds in fee simple to said real estate whenever she deemed it necessary for her support and maintenance or whenever she deemed it advisable for the benefit of the estate; that after the death of said E. L. Owen, the said Louisa Frances Owen executed her deed of trust to J. L. Davis and E. M. Davis to secure a loan of $210. Prior to the death of E. L. Owen he had executed a deed of trust to the Farmers Bank & Trust Company on part of his land to secure a loan of $234.40. This deed was transferred and assigned in 1913 to J. L. Davis and B. M. Davis. On

March 15, 1922, Louisa Frances Owen executed her deed of trust to L. E. Bandy to secure a loan of $427.60 with interest at 10 per cent. from date and that on February 17, 1924, the indebtedness due L. E. Bandy, together with other indebtedness owed by the said Louisa Frances Owen, was paid by W. E. Owen, appellant, and on April 7, 1924, the said Louisa Frances Owen executed her note and second deed of trust to W. E. Owen to secure the sum of $685.05. This mortgage was subject to the first mortgage due the Federal Land Bank of St. Louis. On April 29, 1926, Louisa Frances Owen executed her deed of trust to W. E. Owen to secure a loan of $1,356.90 with interest at 10 per cent. from date until paid, reciting that it was subject to the first mortgage to the Federal Land Bank. On February 1, 1918, Louisa Frances Owen executed her first mortgage to the Federal Land Bank of St. Louis to secure a loan of $1,400 with interest at 5 per cent. per annum. On August 18, 1928, Louisa Frances Owen made, executed and delivered to appellant, W. E. Owen, her warranty deed conveying to him the west ½ of the SW¼ of section 17, and the SE¼ of section 18, all in township 18 south, range 20 west, less one-half of all the oil and gas and other minerals under said lands, the consideration of said deed being the indebtedness due to the said W. E. Owen in the sum of $1,500 and the assumption of the balance due on the first mortgage to the Federal Land Bank in the sum of $1,233.33; that after the execution and delivery of said deed, appellant satisfied the deed of trust which he held against said land, and paid the Federal Land Bank of St. Louis the balance due it under the first mortgage. On October 1, 1928. appellant deeded back to Louisa Frances Owen the SW¼ of the SE¼ of section 18, township 18 south, range 20 west, in order that she might have a home. After October 1, 1928, appellant continued to furnish his mother, Louisa Frances Owen, money and other necessities of life, and on July 9, 1937, she again executed her warranty deed to W. E. Owen conveying to him, his heirs and executors. all her right, title and interest therein as widow of E. L. Owen, and as trustee under the last will and testament of said

E. L. Owen, one-half of all the oil, gas, and other minerals under the N½ of the SE¼ and the SE¼ of the SE¼ of section 18, and the W½ of the SW¼ of section 17, township 18 south, range 20 west, and the fee simple title to the SW¼ of the SE¼ of section 18, township 18 south, range 20 west, covenanting that she would forever warrant and defend the title against all persons, whatsoever. The appellant further alleged that by the execution and delivery of the second warranty deed, he became the owner of the 240 acres of land and all parts thereof, and asked that his title be quieted to the same.

The appellees answered denying the allegations of the complaint and pleaded that W. O. Owen was a tenant in common with the rest of the heirs of E. L. Owen, deceased, and all other heirs of E. L. Owen, deceased, joined in said answer and requested that they be made parties defendant to the cause; also the widow, Louisa Frances Owen, and requested that she be made a party defendant, and to show to the court that she had a lifetime interest in the above described lands. These new defendants adopted the answer of the original defendants.

On March 20, 1939, a motion for an accounting was filed by the defendants, stating that the appellant herein would only be entitled to reimbursement of any money that he paid out, and asked the court that a master be appointed to state an account between the parties.

On June 6, 1939, an amendment was filed to the answer pleading that Mrs. Louisa Frances Owen had no authority to execute any mortgage or any deeds to the land in question and that any instrument executed by her was not binding on the other defendants, and denied that it was necessary for her to execute said instrument in order that she might have support and maintenance. They also sought in the amendment to have an accounting and cancellation of deeds.

On June 27, 1939, appellant filed a reply to the answer and amendment thereto, and denied that Mrs. Louisa Frances Owen did not have authority to execute deed

of trust, mortgage or deeds, and denied that the transaction had between himself and his mother, Louisa Frances Owen, was void, and denied other material allegations in the answer and amendment. He also denied that any of the other heirs had contributed to the support and maintenance of said Louisa Frances Owen. He further stated that the defendants had lived upon the land, appropriated the rents, issues and profits therefrom to their own uses, and had sold the timber on said lands prior to the time he received the deeds. He denies that Louisa Frances Owen did not have legal right to convey the land, and pleaded the seven years' statute of limitations as a bar to the defendant's right of recovery. He also asked in the alternative, that if the court should find in favor of defendants, he be decreed a prior lien, and be subrogated to the rights of the Federal Land Bank for the money that he had furnished, together with taxes, and that a lien be declared on said lands for the payment of same.

The rights and interests of the parties are fixed by the last will and testament of E. L. Owen. The will reads as follows:

"I, E. L. Owen, of Columbia county, Arkansas, being of sound and disposing mind and memory, but of uncertain health, and desirous to make a final disposition of the possessions with which God has blessed me, do make and declare and publish this my last will and testament, hereby revoking all other wills heretofore made by me.

"In the first place, I direct that all of my just debts be paid as soon as possible, without probating them against my estate so that no one will regret having trusted me, when I have crossed the river of life. All of my property be it real, personal or mixed, I give and bequeath to my beloved wife, Louisa Frances Owen, in trust for herself and my children by her, to-wit: Ar villia Augusta Colvin, William Ezra, John Edgar, Wal ter Lee, Gertrude Elizabeth Dumas, Lucious Elze, Arrena Frances Price, Iva Leola Kirkpatrick, Floyd Albert, Marvin Simpson. My wife is to have full con-

trol of the property herein bequeathed as long as she lives or until she marries again. If she should marry again I direct that my property be divided between her and the children, share and share alike. I here empower her as such trustee to dispose of any part of said property and make titles to it including fee simple deeds to the real property, whenever she deems it necessary for her support and maintenance or whenever she deems it advisable for the benefit of my estate. I also direct that she may dispose of any of said property as mentioned in this paragraph, whenever it is necessary so to do for the maintenance and education of my minor children, Marvin Simpson and Floyd Albert.

"I especially authorize my wife as trustee to settle any debts that may be secured against my estate by deeds of trust, or otherwise without order of the court, and to make whatever disposition of the mortgaged property or any other property under her control may be necessary to liquidate the debts, and to this purpose to make fee simple deeds to the property under her control, if necessary.

"At the death of my said wife I direct that all the property remaining after her support and maintenance and the maintenance and education of my minor children heretofore mentioned shall be divided equally between all my children heretofore mentioned share and share alike.

"If at the time of my death I shall have contracted to convey any part of my real estate, I authorize my wife as trustee and executrix to execute said contract by making proper deeds of conveyance according to the terms of the contracts and she is authorized to cancel any such contracts if she deems it advisable.

"Having full faith and confidence in my beloved wife, Louisa Frances Owen, I hereby constitute and appoint her as executrix of my estate, without bond directing her to dispose of my estate as she thinks I desire it to be done.

"In testimony whereof I have hereunto affixed my signature on this, the thirteenth day of March, 1912."

The will was properly executed.

The will, mortgages and deeds, and numerous notes and checks were introduced in evidence.

The court rendered a decree holding that under the will Louisa Frances Owen had a right to mortgage the land and to sell and dispose of it if necessary for her support and maintenance. The court found the value of the land between $2,400 and $3,000, and that the indebtedness due W. E. Owen and the Federal Land Bank was the full value of the property, and that she was authorized under the will to execute the deed to W. E. Owen in 1928. The court further found that the deed of October 1, 1928, from W. E. Owen and wife to Mrs. Louisa Frances Owen was a part of the same transaction and that the conveyance of this land was the same as if it had been reserved to her in the beginning; that W. E. Owen, the appellant, had furnished his mother all the necessities of life and cared for her maintenance and support since 1922, and that the deed of August, 1928, was proper and that the appellant was entitled to have his title quieted to the 200 acres of land and one-half of all the oil, gas and other minerals; that the deed made in 1937 should be canceled. Each party saved exceptions and prayed an appeal to the Supreme Court.

The evidence does not show the indebtedness of E. L. Owen at the time of his death in 1912, but does show that he owed the Federal Land Bank $234.40. There were 240 acres of the land with 60 acres in cultivation. The undisputed proof shows that Louisa Frances Owen, the widow, received a pension of $50 a month, and that she lived on the land, and she and her minor children cultivated it. The testator died in 1912, and the appellant does not claim to have advanced any money until 1919, seven years after the death of his father.

The rights of the parties depend upon the construction and effect of the will. The will, after providing for the payment of the just debts of the testator, bequeathed all of his property, real, personal or mixed, to his wife, Louisa Frances Owen, in trust for herself and children,

naming the children. It further provided that his widow was to have control of the property as long as she lived or until she married; that if she married, the property be divided between her and the children, share and share alike. The will authorized the widow to dispose of the property and make title, including fee simple deeds to the real property, whenever she deemed it necessary for her support and maintenance, or whenever she deemed it advisable for the benefit of the estate. It also provided that she might dispose of the property when necessary for the maintenance and education of the minor children. It was provided that at her death, all the remaining property, that is all the property remaining after her support and maintenance, and the maintenance and education of the minor children, should be divided equally between all of the children, share and share alike.

It will be observed that the property was given to the widow as trustee, and under the terms of the will, she took only a life estate and had no authority to make deeds except for the purposes mentioned in the will. Her right to dispose of any of the property was expressly limited by the will to her support and maintenance, and the education of the minor children, or when she deemed it to be for the benefit of the estate. The evidence does not show that any sales or mortgages were made for the benefit of the estate. It does not show what, if any, amount was expended for the maintenance and education of the minor children. The evidence does show, however, that she received a pension of $50 a month, that she lived on the lands, and cultivated 60 acres of it.

As was said in the case of *Patty* v. *Goolsby*, 51 Ark. 61, 9 S. W. 846, "The testator has given, and no doubt intended to give to his wife Elizabeth, a life estate in both his personal and real property—in his whole estate. It is equally as clear that he gave and intended to give a remainder in fee to his children. . . . 'It is contended that even conceding that the will gives the widow of the testator an estate for life, yet it conferred on her during her widowhood the power to convey the entire estate in fee, and she having so conveyed, the defendants

in error who claim under her have a good title.' But the court says, 'the authorities are averse and show that when a power of disposal accompanies a bequest or devise of a life estate the power is limited to such disposition as a tenant for life can make unless there are other words clearly indicating that a larger power was intended.' " See, also, *King* v. *Stevens*, 146 Ark. 443, 225 S. W. 656; *Chase* v. *Cartright*, 53 Ark. 358, 14 S. W. 90, 22 Am. St. Rep. 207; *Badgett* v. *Badgett*, 115 Ark. 9, 170 S. W. 484.

The language of the will as a whole, clearly indicates that the intention of the testator was to give his widow a life estate with power to sell and dispose of property when necessary for her support and maintenance, for benefit of the estate, or the education of her minor children. She, therefore, had no power to dispose of the property for any other purpose.

There is no evidence that the appellant contributed anything in any way to the widow for seven years, from the time of the death of the testator in 1912, to 1919.

The appellant testified, and when asked about a check dated January 18, 1828, for $100, said it was supposed to be applied on the second mortgage that the widow owed him, and that he had it in his book. He was then asked what the mortgage was for, and he answered that he had advanced her money from time to time to pay off other notes. He could not tell what his father owned at the time of his death, and when asked if it was not his information that all his father owed the Farmers Bank & Trust Company was a note for $200, he said that it was his understanding that his father owed $500 to J. L. and D. M. Davis. When asked what item or amount of items he had furnished his mother for her support, he said that he did not know anything about it now, could not keep it all in his head, and that when his mother signed the deed to him in 1928, he paid his mother the $1,500, but not all at one time.

Appellant first calls attention to the case of *Piles* v. *Cline,* 197 Ark. 857, 125 S. W. 2d 129. We do not think that case supports the contention of appellant in the

instant case, because the will in the instant case gave the widow the right to sell or dispose of property for certain specific purposes. In the case referred to, the testator, in his will, gave the property to his wife to do with as she saw fit. In this case, the testator limited her power to dispose of the property, as already mentioned, and in the case referred to there was no limitation to her power. In that case the court said: "So, here, we conclude that the testator devised the bulk of his estate, including all his personal property, to his wife, to use it 'as she sees fit,' and to sell it, if she saw proper to do so, and he did not merely indicate the disposition he wished his wife would make of any property she had not used, consumed or sold, but he made that disposition himself. The will itself disposed of the property which the wife had not used, consumed or sold, and it was unnecessary for the wife to do anything or to take any action to effectuate the testator's wishes."

The court in that case also said: "The duty of the court is to ascertain the intention of the testator, and to give that intention effect. We must do this by a consideration of the language employed in the will. The imperfection of our language is such that it is difficult to write a sentence which can be given only one interpretation. One may write a sentence which expresses the thought he intended to convey, and it may express that thought, but, if this thought or purpose is involved, it is very difficult to so express it that no construction can be given except that intended."

The appellant also calls attention to and relies on the case of *Jackson* v. *Robinson,* 195 Ark. 431, 112 S. W. 2d 417. In that case we said: "The intention expressed in the will of Richard Jackson, we think, appears clearly from the second clause of the will, and certainly when the whole will is considered the intention of the testator is manifest. While the second clause says that the testator gives his entire property to Jennie Jackson, it states: 'With full power in her as executrix, jointly with my executor, A. W. Jackson, to sell and convey any and all real estate,' etc. This is not in conflict with the fourth clause of the will. If it had been the intention of the

testator to give her the property in fee simple, there would have been no necessity to say that she might have power to sell jointly with the executor. If the property were given to her in fee simple, there would be no reason to say anything about her power to sell. She would necessarily have had that power. But when the testator stated that she, jointly with the executor, A. W. Jackson, had power to sell, it necessarily meant that she was given a life estate with power to sell, jointly with the executor.''

The appellant states: ''Where a testator gave an estate for life only, with the added power to the life tenant to convey the estate absolutely, the life tenant may defeat the estate of a remainderman under the will by the exercise of the power of disposal during his lifetime.'' Appellant cites the case *Archer* v. *Palmer*, 112 Ark. 527, 167 S. W. 99, Ann. Cas. 1916B, 573, to sustain his contention. The will in that case contained the following provision: ''I hereby direct that my beloved wife, Laura O. L. Archer, shall have full power to sell and dispose of any and all property, both real, personal and mixed in such manner as she may desire of which I may die seized.''

Appellant next calls attention to the case of *United States of America* v. *Moore*, 197 Ark. 664, 124 S. W. 2d 807. The court said in that case: ''We hold, therefore, that the effect of the will and codicil is to limit in T. A. Beck a life estate, and not an estate in fee, and that all of said property remaining unused and unexpended at his death reverted to appellant. It necessarily follows that any attempt by T. A. Beck to give away the property in question would be void, and of no effect as against the rights of appellant.''

In the cases relied on by appellant, the testators in their wills, gave the absolute power to dispose of the property without limitation. In the case at bar, the power to dispose of the property is expressly limited to certain purposes, and the widow could not dispose of the property for any other purpose than those mentioned in the will. In the case of *United State of America*

v. *Moore, supra,* it will be observed that the court held that Beck could not give away his property, and any attempt to do so would be void, and any attempt to dispose of the property in this case for any purpose except those mentioned in the will, would be void. She could not give it away. The power to sell and dispose of the property for the purposes mentioned in the will, did not give her authority to give the property away.

The evidence shows that the appellant, after seven years, contributed sums of money to support his mother, and that some of the other heirs cared for her and stayed with her. The widow is 84 years old, and has no recollection of some of the transactions mentioned. When the widow was testifying, she was asked: "Do you remember how much he gave you at that time (meaning appellant)? She answered: "He was to give me $3,000." When asked how much he gave her, she answered: "He did not give me anything, to tell the truth about it."

Marvin and Floyd Owen, who were minors at the time of their father's death, lived on the farm with their mother and supported themselves and their mother.

Mrs. Louisa Frances Owen testified that she was 84 years old, and that she signed the deed to W. E. Owen; that the land was in the Federal Land Bank, and she thought it would be less trouble to her to sell it to him and let him look after it; that he took the land to pay off the Federal Land Bank and other indebtedness; she did not remember signing the deed in 1937, and nothing was said about oil or mineral deeds. She remembers signing a deed in August, 1928, to W. E. Owen to the 240 acres of land, and remembered that in October following he deeded her back 40 acres; but she did not remember signing a deed in July, 1937; remembers signing a paper, but did not know it was a deed.

Whether she remembered it or not, as we have already said, she had no authority under the will to make these deeds.

It, therefore, follows that the court was correct in holding that the deed of 1937 should be canceled, and

was in error in holding the other deeds valid and quieting title in appellant to the 200 acres.

The decree is, therefore, affirmed on appeal and reversed on cross-appeal, and remanded with directions to enter a decree canceling and setting aside the deed to the 200 acres.