Mrs. J. Fred (Mildred) ALEXANDER,
Executrix *v.* Dorothy Helen ALEXANDER,
Executrix

77-34                                              561 S.W. 2d 59

Opinion delivered January 9, 1978
(In Banc)
[Rehearing denied February 27, 1978.]

*Loyd T. Harper* and *McMath, Leatherman & Woods,* for appellant.

*W. Dane Clay,* of *Rose, Nash, Williams, Carroll, Clay & Giroir,* for appellee.

JOHN A. FOGLEMAN, Justice. This case involves litigation in the probate and chancery courts of Crawford County between Mrs. J. Fred (Mildred) Alexander, the widow and executrix of the estate of J. Fred Alexander, and Dorothy Helen Alexander, the executrix of the estate of his son, Caruth M. Alexander. The basic conflict is over interpretation of the will of J. Fred Alexander, who died on August 10, 1956. In addition to his widow Mildred, he left one son, Caruth M. Alexander (sometimes referred to as Caruth M. Alexander II) and one daughter, Mary Mildred Alexander. Fred's will, dated April 16, 1956, was admitted to probate on August 20, 1956. At that time, both of his children were adults and neither of them had any children.

Pertinent paragraphs of his will read as follows:

2. I give, devise and bequeath to my wife, Mildred Alexander, one-half of all the property of my estate, be the same real, personal or mixed, of whatsoever kind and nature wheresoever situated, in lieu of dower, the same to be hers absolutely and in her own right, said one-half not to be charged with any part of the debts, taxes or the expenses of administration of my estate, such debts, taxes and expenses to be chargeable to and payable from the remaining one-half of my estate.

3. All the rest and residue of my estate, be the same real, personal or mixed, of whatsoever kind and nature and wheresoever situated, I give, devise and bequeath to my wife, Mildred Alexander, in trust however for my only son, Carruth M. Alexander, and my only daughter, Mary Mildred Alexander, after the payment of all debts, taxes, including Federal and State estate and/or

inheritance taxes, which debts, taxes and expenses are to be charged to this said residue in such manner that one-half of my estate before payment of such debts, taxes and expenses shall go to my wife, Mildred M. Alexander, free of any such charges. I further give, devise and bequeath to my said wife all the income from the trust estate during her lifetime.

4. After the administration of my estate and the payment of all debts and taxes, it is my will and desire that my trustee herein named have full and complete authority to sell and dispose of any portion or all of the personal property of the trust estate and I authorize and empower her to invest and reinvest all personal property of the estate in any manner and at any time she may desire, and request and direct that she not be required to account to the court therefor.

5. It is my will and desire that my wife, the said Mildred M. Alexander, shall have the right to invade, use and enjoy the corpus of the trust estate at any time she may deem necessary.

6. It is my will and desire that all or any part of my real estate, whether a part of the trust estate or otherwise, may be sold and disposed of at any time at private sale or otherwise by and under the agreement of the said Mildred M. Alexander, Caruth M. Alexander and Mary Mildred Alexander and the execution of a deed or other conveyance by them shall be sufficient evidence of such agreement.

7. At the death of my wife the above mentioned trust shall cease and title to all property, real, personal or mixed, shall vest in the said Caruth M. Alexander and Mary Mildred Alexander in equal shares. In the event of the death of my son, Caruth M. Alexander, without issue, prior to the death of my wife, Mildred M. Alexander, then it is my will and desire that the provision hereinbefore made for him shall lapse and the whole of such residue, after the death of my said wife, go to my said daughter, Mary Mildred Alexander, or to her children if she be then deceased.

8.   I hereby nominate, constitute and appoint my wife, the said Mildred M. Alexander, as executrix of my estate under this my last will and testament and request the court to permit her to serve as such without bond or other security for the faithful performance of her duties as such.

An inventory was filed on June 25, 1957, listing all property of the estate. Certain personal property was sold by the executrix, with the approval of the probate court. An accounting was filed on October 10, 1959. The next accounting was filed March 1, 1961, stating that stock in the Commercial Bank, owned by the estate, had been distributed and delivered to Caruth M. Alexander, that a note of Caruth payable to the estate had been cancelled and certain cash and two farms conveyed to Mary Mildred Alexander, so that the distribution to the two children was equalized. This annual accounting was approved and confirmed by the probate court on May 1, 1961. In November or December of each of the next four years, an annual account was filed by the executrix, in which she simply stated that "all income received from the estate is the property of Mrs. J. Fred Alexander under the will and there are no changes from the previous account filed herein." These accounts were approved by the probate court. Similar accounts were filed in subsequent years and only one of these varied from the pattern of the others. In December, 1968, the account revealed that 76.4 acres of cotton and 105 shares of Sunray D-X Oil stock had been sold. This account was approved by the probate court in December, 1969.

In the meanwhile, Caruth had died on May 29, 1967, leaving a widow, Dorothy G. Alexander (who was appointed executrix of his estate) and one child, Caruth M. Alexander III, who was born January 1, 1960. Caruth's will was admitted to probate on June 19, 1967. On July 27, 1970, Dorothy, as executrix of the estate of Caruth, filed a petition for an accounting in the estate of J. Fred Alexander, alleging that Caruth had a remainder in one-half of the residuary trust under Fred's will, and asking that the executrix under that will be required to make a complete accounting for the estate as of May 19, 1967, and on the current date, reflecting all dispositions and distributions of assets remaining in the residuary trust. An order of the probate court was entered on

this petition, directing the executrix of Fred's estate to make such an accounting.

On January 18, 1971, appellant filed an accounting, purportedly covering the period beginning January 20, 1961 and ending on December 31, 1970, described by her as a "revised annual accounting for years 1961 through 1969 and annual accounting for 1970." In Schedule A of that account under the heading, charges to accountant, the following statement appeared: "All real estate intact except the following, which was sold by agreement of the three beneficiaries under the agreement attached hereto as Exhibit "A" and the terms of the will. Conveyed property was erroneously omitted from prior accountings.

A. One-half interest in building in Van Buren, Arkansas, sold to Thel Bowlin in 1957, and distributed to beneficiaries.

B. Sec. 7, Twp. 9, Range 29 — 40 acres conveyed July, 1964, to Caruth Alexander.

C. Sec. 16, Twp. 9, Range 29 — 60 acres sold to Paul Alexander in 1965."

Exhibit A was an agreement dated January 15, 1959, purportedly signed by Mary Mildred Alexander, Caruth M. Alexander and Mrs. J. Fred Alexander. This account was confirmed by the probate court on February 19, 1971. In the meantime, on February 1, 1971, a deed by the executrix conveying all property of Fred's estate to Mildred Alexander, signed by her as executrix, had been recorded. It was also dated February 1, 1971.

On May 3, 1971, appellant filed a "Final Account and Petition and Order Allowing Final Account, Distribution and Discharge," and incorporated therein accounts previously filed covering the period from August 20, 1956 to December 31, 1970, alleging that distribution had been made in full to Mildred Alexander as the person entitled thereto according to the terms of the will and the agreement just mentioned. It was alleged by this agreement, Fred's two children had waived any present or future rights in his estate. Dorothy, as ex-

ecutrix of Caruth's estate, filed objections, alleging that Caruth III was then the beneficiary of the residuary trust created by the last will and testament of his father, and that the purported agreement between the widow and children of Fred was not genuine, was without consideration and was ineffective to convey either the contingent remainder of Caruth in the residuary trust under Fred's will or the remainder interest of Caruth III. Objection was also made to all accountings, on the ground that they were not in compliance with the court order entered upon the petition of the executrix of Caruth's estate. In this pleading, this executrix also asked that Mildred Alexander be required to account fully for her administration of Fred's estate and to reconvey to the estate or the residuary trust all property conveyed by her as executrix to herself individually and that the purported agreement between the widow and children of Fred be expunged from the records of Crawford County.

In July, 1973, Mary M. Alexander and Mildred M. Alexander filed a suit in the chancery court, seeking to require Dorothy, as executrix of Caruth's estate, to specifically perform the alleged agreement among the widow and children of Fred by delivering to them the plaintiff's 300 shares of stock in the Commercial Bank of Alma, and to perform certain other alleged obligations under that agreement.

On February 25, 1975, the chancery case and the pertinent matters pending in the probate court in the estates of J. Fred Alexander and Caruth M. Alexander II were consolidated for trial. On July 12, 1976, the chancellor and probate judge rendered an opinion in the consolidated cases and entered a separate order in each case. In the opinion, the judge held that the will of J. Fred Alexander did not vest a fee simple interest in his estate in his widow; that Paragraph 3 gave the life "tenant" of the trust the income therefrom and that Paragraph 4 allowed the trustee to dispose of the personal property without accounting; that the executrix of this estate should give evidence of her disposition of this property in the form of an account current in detail and an accounting at the date of the death of Caruth Alexander, with credit to be given for conveyances made by agreement of all parties and execution of a deed by them pursuant to Paragraph 6 of Fred's will; that the deed of executrix to herself individually

should be cancelled and set aside as a disposition of trust realty not in conformity with Paragraph 6, and as unauthorized and overreaching; that the contentions of Mrs. Mildred Alexander as to her power of invasion and disposition of the corpus of the trust were denied; and that, thereafter, sales or disposition of other real estate of the trust will require the assent of the surviving three heirs, or their estates or successors; that, even though Fred's widow has a right, when necessary, to invade the corpus of the trust, she must show that the invasion is necessary, and give notice of the transfer and conveyance of any real property to other interested parties and "assent" be obtained from the residuary beneficiaries. The court directed the closing of Fred's estate and the establishment of a trust estate in the chancery court and the removal of Mildred Alexander as executrix and trustee.

Mrs. J. Fred (Mildred) Alexander had never separated or segregated the property of her husband which passed to her under Paragraph 2 of his will from the one-half to be held by her in trust, taking the position that under the will she took all property absolutely in fee. Her contention was that the will gave her the power to dispose of all property as she desired to the exclusion of the remainder interest of the two children. She further contended that, even if she were found not to have been left a fee simple interest, that her power to invade, use and enjoy the corpus and dispose of it by conveyance or otherwise gave her the power or right, as trustee, to convey the property to herself, as she had done, and that this conveyance defeated the rights of any remaindermen. She also contended, in the alternative, that she acquired the entire estate under an agreement with Caruth M. Alexander II, by a purported codicil to the will of J. Fred Alexander and by a codicil to Caruth's will. Mary M. Alexander joined Mildred Alexander in pleadings and appearances by counsel, but did not testify.

On the other hand, Dorothy Alexander, as widow of Caruth, mother of Caruth III and executrix of Caruth's estate, contended that Caruth had an inalienable and unalienated contingent remainder interest under the provisions of Fred's will, that she was entitled to a full accounting in the estate of J. Fred Alexander and its interest in the trust

property, and that the deed from the trustee under Fred's will to herself as an individual should be cancelled and Mildred Alexander removed as trustee.

The trial judge construed the will to vest a fee simple interest in only one-half of the estate in Fred's widow, and a "life tenancy" in the income from the trust consisting of the other one-half and the absolute power of disposition of the personal property, without accounting to anyone. He found that there was no evidence to indicate that the invasion of the corpus of the trust by the deed of Mildred Alexander, as trustee to herself individually was necessary, reasonable, or in good faith. He found that the purported agreement among Fred's widow and children was ineffective, that Caruth and Mary Mildred acquired contingent interests in the testamentary trust and that the grandchildren of the testator took an interest in the trust which prevented conveyance of the interest by Caruth because of the birth of Caruth III. It was also held that Caruth III succeeded to the interest of his father in the trust estate.

Although the trial judge held that Caruth had a "contingent interest" in the testamentary trusts and that, when Caruth died, his only issue, Caruth III, became the holder of this "contingent interest" and found the issues in favor of the appellee, it has been suggested that, upon the authority of *Watkins* v. *Quarles,* 23 Ark. 179, Fred's will vested a defeasible fee in Caruth. Appellant has not argued here that this is so. For the purposes of this appeal, the question whether Caruth held a defeasible fee or a contingent remainder is of no consequence, even if that question was actually ever in issue in the trial court. There was no conveyance of the contingent remainder or defeasible fee by Caruth to anyone, unless it was accomplished by an alleged agreement among the widow of the testator (Mildred) and his two children (Caruth and Mary Mildred). If we assumed that Fred's will vested a defeasible fee in Caruth, it would pass under Caruth's will, in the absence of this alleged agreement.

Appellant contends that Caruth conveyed his interest during his lifetime by an agreement with the widow and Mary Mildred. This and other arguments made by appellant turn upon this agreement. But it is not even properly before

us. On the second day of the trial, appellant's trial attorney stated that Mildred Alexander would stand on the will alone and "withdraw the agreement and codicil, because we are firmly convinced, under the will, she had the power to convey," adding, "so we will withdraw any evidence regarding the agreement and the codicil and stand on the interpretation of the will itself." New or substituted counsel is not licensed to revive issues which have been abandoned in the trial court.

Appellant contends that the court erred in denying Mrs. J. Fred Alexander the power of invasion and disposition of the corpus of the trust estate. It is rather difficult to relate appellant's statement of this point and her argument to the judgment entered in the probate court. As we view it, the court did construe the will to give the widow the power to invade the corpus, although it did require a showing that invasion was necessary. Perhaps appellant intended to attack the limitation upon invasion by the widow and disposition by the trustee, but we are unable to find any holding that these rights and powers did not exist.

Appellant next contends that the court erred in holding that Fred's will did not vest the fee simple title to the entire estate in his widow. We agree with the trial court and disagree with appellant. At the outset, we observe that it would be very strange for a testator to have added at least three paragraphs to his will creating a trust and providing for its termination and for the application of the income, if he intended that the wife have a fee simple title. To say that he did would defy common sense and reason. See *Lawrence v. Lawrence,* 225 Ark. 500, 283 S.W. 2d 697.

Appellant's reliance is placed upon cases, such as *Bernstein v. Bramble,* 81 Ark. 480, 99 S.W. 682, having no application to the facts here. See *Archer v. Palmer,* 112 Ark. 527, 167 S.W. 99. This will is not one in which a fee simple title is first created and by later terms an effort is made to limit the grant, as was the case in *Bernstein.* This is not the question presented. The question is whether the testator, by conferring on his widow the right of invasion, use and enjoyment of the corpus created a fee simple title. See *Pearrow v. Vaden,* 201 Ark. 1146, 148 S.W. 2d 320; *Archer v. Palmer,* supra. It is obvious to us that the probate judge was correct in holding that he did not. Only an undivided one-half interest in the proper-

ty was vested in the widow absolutely. The other one-half was vested in her in trust for the testator's children, with the wife to receive all income from the trust during her life. The absolute power of the trustee to dispose of property without accounting to the court was limited to personal property. Mildred Alexander was vested with the right to invade, use and enjoy the corpus of the trust estate any time she deemed necessary. In considering the meaning of these terms, the words use and enjoy are somewhat synonymous. The word "use" in this context means to enjoy, hold, occupy, or have in some manner the benefit thereof; and, as to real estate, its use is its occupancy or cultivation or the rent which can be obtained for its use. *Galloway* v. *Sewell,* 162 Ark. 627, 258 S.W. 655. The right to "use and control" does not vest absolute title. *Blanton* v. *First National Bank of Forrest City,* 142 Ark. 404, 219 S.W. 305. See also, *Fields* v. *Kline,* 161 Ark. 418, 256 S.W. 355; *Pierce* v. *Lowe,* 221 Ark. 796, 256 S.W. 2d 43. Likewise, "enjoy" has a similar meaning in this context. This word in instruments of transfer means to make such use of the thing transferred as is consistent with the tenure by which it is held. *Ex parte Okahara,* 191 Cal. 353, 216 P. 614 (1923). The accepted definition is "to have, possess and use with satisfaction, to occupy or have the benefit of." *Wiant* v. *Lynch,* 104 W. Va. 507, 140 S.E. 487 (1927); *Board of Trustees of Westminster College* v. *Dimmitt,* 113 Mo. App. 41, 87 S.W. 536 (1905). The right to "use and enjoy" is an ordinary incident of a life estate, and the word "enjoy" conveys the idea of retention rather than disposition and does not signify sale or disposal. *Wiant* v. *Lynch,* supra. The right of Mildred Alexander to use and enjoy the trust corpus was consistent with her right to the income for life and did not confer any right on her to dispose of any part of it. Any right that she had to dispose of the corpus must be found in the word "invade." The right to invade the corpus means the right to infringe or encroach upon it. Webster's New International Dictionary (2d Ed.) This power, however, is not, in and of itself, a power of disposition. The fact that the life beneficiary of the trust may invade the corpus does not mean that the life beneficiary may convey the trust property.

The right to invade the corpus was vested in the wife as beneficiary and not as trustee and no rule of public policy prohibits a testator from conferring this right on a beneficiary.

*In re Houghton's Estate,* 118 Vt. 228, 105 A. 2d 257 (1954); *In re Solinger's Estate,* 4 Misc. 2d 79, 155 N.Y.S. 2d 831 (1956). See also, *In re Nathan's Estate,* 17 Misc. 2d 822, 186 N.Y.S. 2d 185 (1959); *In re Walsh's Will,* 85 N.Y.S. 2d 207 (1948). Conferring on a life tenant a broad power of invasion does not convert a life estate into a fee, even though the power is unrestricted so that the remainder may ultimately amount to little or nothing. *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 170 A. 2d 130 (1961). Even if the right of invasion by a life tenant were considered to be equivalent to an unlimited power of disposition, the life estate would not be converted to a fee simple title, because the power of disposition is only an authorization to create an estate derived from the will of the testator and not a right to the property or an estate in itself. *City of Little Rock* v. *Lenon,* 186 Ark. 460, 54 S.W. 2d 287; *Archer* v. *Palmer,* supra; *State* v. *Gaughan,* 124 Ark. 548, 187 S.W. 918. This is true in spite of the fact that a conveyance by a life tenant to a third party might actually defeat the rights of a remainderman. *Pearrow* v. *Vaden,* supra; *Union & Mercantile Trust Co.* v. *Moore,* 143 Ark. 519, 220 S.W. 820; *Owen* v. *Dumas,* 200 Ark. 601, 140 S.W. 2d 101. If the testator had intended to vest the fee simple title in his widow, a provision for invasion by her would have been unnecessary and mere surplusage. See *Lawrence* v. *Lawrence,* supra; *Jackson* v. *Robinson,* 195 Ark. 431, 112 S.W. 2d 417.

In the will before us an express trust was created under which Mildred Alexander held title as trustee for the ultimate beneficiaries designated in Paragraph 7 of the will. This negates the idea that the testator intended that his widow be vested with a fee simple title. *Lawrence* v. *Lawrence,* supra; *Owen* v. *Dumas,* supra.

Appellant next contends that the trial judge erred in ordering that all future sales and dispositions of the trust property must have the assent of all the beneficiaries. As we have pointed out, the right to invasion of the corpus is vested in the widow, not the trustee. It appears to us that Paragraph 6 of the will is not a limitation on her right to invade the corpus whenever she deems it necessary. That paragraph relates solely and only to sales by agreement of the parties unrelated to any invasion of the corpus. Only by reading something into the clause could it be said that there was any intention to re-

quire an agreement of all parties before there could be an invasion of corpus. It seems to us that this provision simply enabled the widow and children to dispose of real estate constituting a part of the corpus of the trust by agreement, but without invasion of the corpus. This part of the court's judgment was not within the jurisdiction of the probate court if it was an attempt to administer the trust. The probate court is a court of limited and special jurisdiction, having only such powers as are expressly granted by statute or the constitution or necessarily incident thereto. *Hilburn* v. *First State Bank of Springdale,* 259 Ark. 569, 535 S.W. 2d 810. Its jurisdiction is set out in Art. 7 § 34 of the Arkansas constitution, as amended by Amendment 24, § 1. Even though the amendment authorized the General Assembly to consolidate chancery and probate courts, this has not been done. Nothing in these constitutional provisions gave the probate court the power to administer the trust created by J. Fred Alexander's will. This jurisdiction is exclusively in the chancery court. *Spradling* v. *Spradling,* 101 Ark. 451, 142 S.W. 848.

The jurisdiction of the chancery court was invoked only in the action in which appellant sought specific enforcement of an alleged agreement among the widow and children. The counterclaim of appellee did seek cancellation of the agreement and the deed upon which Mildred Alexander relied in support of her claim that she was the owner of all real estate which was subject to the residuary trust. To that extent a construction of the will was required, but this did not justify or confer jurisdiction to impose the restrictions placed on future sales and conveyances.

Appellant also asserts that the court erred in cancelling the agreement of January 15, 1959 among the widow and children (of which specific performance had been sought) and any conveyances made thereunder and in refusing to admit a purported codicil to the will of J. Fred Alexander to probate. It is sufficient to say that appellant is in no position to complain of the court's action as to the agreement or the codicil. As previously pointed out, neither instrument was in evidence or in issue.

The only specific argument advanced by appellant directly relating to the cancellation of the deed of real estate

to Mildred Alexander individually is devoted to the contention that she had the fee simple title, or if not, she had the right to invade and dispose of the estate. However, in reviewing appellant's first argument, the argument in her reply brief that Paragraph 6 of the will is the only possible limitation on Mildred Alexander's power of disposition and the statement in the conclusion of the reply brief that since she had the right to convey property to herself because of her right to invade, use and enjoy the corpus of the trust, the estate has no assets and should be closed and the executrix discharged, it is necessary that we address ourselves to the validity of the "invasion" of the corpus by this deed.

The right to invade, use and enjoy the corpus of the trust estate at any time she may deem necessary is not without limitation, especially where a trust is involved. An attempted gift of property by the life tenant is void as to remaindermen, particularly when the property is held in trust. *Owen v. Dumas,* supra. See also, *U.S.* v. *Moore,* 197 Ark. 664, 124 S.W. 2d 807; *Iwerson* v. *Dushek,* 260 Ark. 771, 543 S.W. 2d 942. A simulated conveyance is also void. *Reddin* v. *Cottrell,* 178 Ark. 1178, 13 S.W. 2d 813. See also, *Archer* v. *Palmer,* supra. Self-dealing by a trustee or any fiduciary is always suspect. It is a universal rule of equity that a trustee shall not deal with trust property to his own advantage without the knowledge or consent of the cestui que trust. *Patterson* v. *Woodward,* 175 Ark. 300, 299 S.W. 619; *Selig* v. *Morrison,* 230 Ark. 216, 321 S.W. 2d 769. The policy of the law demands such a strict adherence to duty that no temptation to weigh self-interest against integrity can be placed in a trustee's way, so that, where a vendor has a fiduciary duty and has an interest in the purchase, the law stamps the act as fraudulent per se. *McGaughey* v. *Brown,* 46 Ark. 25. Where there are several beneficiaries the trustee owes the same fiduciary duty to all of them to protect their respective interests, without partiality or favor to some beneficiaries at the expense of others. He owes a contingent beneficiary the same fiduciary duty he owes one with a vested interest, insofar as protection of the rights of the contingent beneficiary is concerned. *Selig* v. *Morrison,* supra. The duty is particularly applicable where the trustee has a beneficial interest in the trust property. *In re Coyle's Estate,* 200 Misc. 421, 104 N.Y.S. 2d 260 (1951). This means that the trustee could not change the title to property

constituting a part of the corpus of the trust to herself without the knowledge of the cestui que trust. *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 132 A. 902 (1926). A trustee simply cannot convey property to himself when the terms of the trust do not specifically authorize him to do so. *Oliver* v. *Culpepper,* 209 Ark. 326, 190 S.W. 2d 457.

Although the widow's discretion in this case is quite broad, it is not without any limitations. The words "deemed necessary" imply a requirement of good faith in the exercise of an otherwise unlimited exercise of discretion. Case Note 95, Univ. Pa. Law Rev. 241, 242. As the writer there points out, the word "deemed" means "considered, determined or adjudged" and "deem" signifies a deliberate exercise of judgment, rather than an arbitrary exercise of will. See also, Webster's New International Dictionary (2d Ed.); *In re Smith's Estate,* 129 Misc. 497, 222 N.Y.S. 588 (1927).

Even when the testamentary grant creates a life estate rather than a trust, the life tenant having the discretion to dispose of the subject property for his own benefit must exercise his discretion in good faith and not squander or waste the property to prevent the remainder of the estate from going to the remainderman. *Stocker* v. *Foster,* 178 Mass. 591, 60 N.E. 407 (1901); Annot. 2 ALR 1243, Supplemented 27 ALR 1381, 69 ALR 825, 144 ALR 946. See also, *Pearrow* v. *Vaden,* 201 Ark. 1146, 148 S.W. 2d 320. A life tenant normally has the duty to conserve the estate. *Love* v. *McDonald,* 201 Ark. 882, 148 S.W. 2d 170. The power of invasion by the life tenant of "as much of the principal . . . as in his judgment is necessary and proper" must be exercised in good faith. *In re Brigg's Will,* 223 N.Y. 677, 119 N.E. 1032 (1918). See also, *In re Smith's Estate,* supra. A power "to be used for his own personal benefit insofar as he requires it" does not limit the power to the "needs" or "support" of the life tenant, but it requires action in good faith toward the remainderman. *In re Robinson's Will,* 101 Vt. 464, 144 A. 457, 75 ALR 59 (1929). Even the demand or request by a lifetime beneficiary of a trust having the power to consume the corpus must be made in good faith and not for the purpose of depleting the corpus and defeating the intention of the settlor. *Ray's Estate,* 39 Pa. D.&C. 502 (1940). See also, *Saurmann's Estate,* 39 D.&C. 629 (1940). Where the purpose of the income bene-

ficiary with sole discretion to invade the corpus is to defeat the rights of the remainderman, the exercise of the discretion is not in good faith. *Groesch Estate,* 29 Pa. D.&C. 2d 155 (1962). See also, *Stocker* v. *Foster,* supra. It has been held that a demand for the entire corpus of a trust by a surviving spouse having an absolute power of invasion is premature when made before the trustee has come into possession of the corpus. *Criswell Estate,* 27 Pa. D.&C. 2d 83 (1961). Such a demand at any time must be in good faith and not the result of disagreements. *In re Smith's Estate,* supra.

This case is readily distinguishable from *Johnson* v. *Lehr,* 192 Ark. 1004, 96 S.W. 2d 20 and *Weeks* v. *Weeks,* 211 Ark. 132, 199 S.W. 2d 955. There was no trust involved as to the residuary estate in either of those cases, as there is here. In *Johnson,* there was no controversy between the life tenant and remaindermen. The litigation was between the life tenant's grantee, who does not appear to have been a donee, and a prospective purchaser from the grantee. More importantly, however, the remainder in both *Johnson* and *Weeks* was described in terms differing from those used here. In *Johnson,* the court found an implied power of sale in and devise and bequest to the widow "for her own personal use, as long as she may live and at her death *should there be any property or moneys left after the payment of her funeral expenses and debts . . .* it is my *desire* that the residue be divided equally between my nephew . . . and the heirs of my beloved wife . . . meaning that the entire half ( ½ ) of the residue, *if there be any,* shall go to my nephew . . . and the other one-half to be given to her heirs . . . " (Emphasis added.) In *Weeks,* the testator left the property to the widow "for her own personal use so long as she shall live, and at her death I direct that *whatever remains of said bequest* be divided between my son . . . and my daughter . . . , share and share alike." There is no such qualifying language in describing the remainder here, even though it is subject to the widow's right of invasion. Further, there is no limitation that the life tenant in those cases should "deem [an invasion] necessary."

When the exercise of a life tenant's discretion is questioned by remaindermen in a proceeding against the life tenant, and not a bona fide purchaser, the burden of showing that an exercise of the power was in good faith rests on the life

tenant. See *Stocker* v. *Foster,* supra. Even a party having an uncontrolled discretion to apply the corpus of a trust for the benefit of a beneficiary entitled to all the trust income during his lifetime, must exercise that discretion in good faith. *Lees* v. *Howarth,* 85 R.I. 321, 131 A. 2d 229 (1957); Case Note, 60 Harvard Law Rev. 320, 321. The requirement of good faith in the exercise of the right to invade the corpus is at least as great when a trust relationship is involved, as it is when the relationship is simply that of life tenant and remainderman. See *First National Bank & Trust Co.* v. *Finkbiner,* 416 P. 2d 224 (Wyo., 1966); *Plummer* v. *Roberts,* 315 Mo. 627, 287 S.W. 316 (1926); *Blunt* v. *Kelly,* 131 F. 2d 632 (3 Cir., 1942). It is also a rule of evidence that, on a trial where a fiduciary and a beneficiary are the adverse parties, the burden rests on a fiduciary to explain and justify transactions in which he may have acted to his own advantage at the expense of the beneficiary. *Barnett* v. *Ross,* 333 Pa. 510, 3 A. 2d 923 (1939); *Foley* v. *D'Agostino,* 21 A.D. 2d 60, 248 N.Y.S. 2d 121 (1964); Accord, *Bond* v. *Marlin,* 199 Ark. 806, 136 S.W. 2d 460.

While the clauses of the will differ as to personal property, we think that Mildred Alexander was under a trust obligation to the remaindermen as to the proceeds of any sale of personalty. *Patty* v. *Goolsby,* 51 Ark. 61, 9 S.W. 846. The right of the holder of a "life estate" to use money or its equivalent permits consumption of interest or income therefrom. *Chambers* v. *Williams,* 199 Ark. 40, 132 S.W. 2d 654. Of course, the owner of a "life estate" in personalty that is consumed or worn out by use, does not have the same duty to preserve it for the remaindermen. *Dillen* v. *Fancher,* 193 Ark. 715, 102 S.W. 2d 87; *Fields* v. *Kline,* 161 Ark. 418, 256 S.W. 355.

There is a total absence of any showing of good faith of Mildred Alexander in the exercise of her discretion in this case. There was no error in the cancellation of the deed or in requiring the executrix to render an accounting for both real and personal property, at least sufficient to permit identification of the trust corpus.[1] Of course, she should not be re-

---

[1] It is not clear to us that the statement in appellee's brief that it is only real estate with which the court is now concerned operates to relieve appellant from any accounting for personal property, because we are not familiar with the terms of the distribution made. If the parties treated the

quired to account for any of the income from any of the property.

The causes are remanded to the probate and chancery courts for entry of judgments and decrees and for further proceedings not inconsistent with this opinion.

personalty and the realty as if the will provided for an outright bequest of one-half of the personalty and an outright devise and bequest of the one-half of the total assets of the estate, perhaps there would be no necessity for accounting for personalty, if Caruth III was bound by these actions. This distribution does not seem to have been taken into account by the trial court and we have not been referred to the record of these transactions in the transcript.