LESTER *v.* KIRTLEY.

Opinion delivered July 22, 1907.

1. TENANCY IN COMMON—DEVISE.—Where land was left by will to the testator's children, they became tenants in common under Kirby's Digest, § 739. (Page 560.)

2. EQUITY—JURISDICTION IN PARTITION.—The ancient jurisdiction of chancery to partition lands has not been divested by Kirby's Digest, § 5770, conferring jurisdiction in such case upon the circuit court. (Page 561.)

3. SAME—JURISDICTION TO ADMINISTER COMPLETE RELIEF.—Where a suit was brought in equity to partition a testator's lands among his devisees, and an answer was filed alleging that since the suit for partition was brought defendants have been appointed executors of the testator's will and that they hold a claim against the estate which should be prosecuted in the probate court, equity, having acquired jurisdiction to make partition, may proceed to adjudge the question of the amount and validity of defendants' claim. (Page 561.)

4. WILL—POWER OF EXECUTORS TO CONTRACT DEBTS.—Where a will provided that the testator's entire estate was left for the sole use and support of his wife for her life or until she remarried, and that thereafter the estate should be divided or sold, the executors were empowered to use the rents and profits of the entire estate to support the widow, but were not authorized to contract debts against the real estate that would result in its sale. (Page 561.)

5. SAME—ESTATE DEVISED.—Where a testator gave his entire estate to his wife for her sole use and support, but provided that at her death

it should be divided among his children, she took a life estate with
remainder to her children. (Page 562.)

6.  ADMINISTRATION—LACHES.—Where executors waited for twelve years
    after the testator's death before probating the will and procuring
    letters testamentary, they will, as to any claims in their favor, be
    held to be barred by laches for not pursuing the statutory remedies
    earlier. (Page 562.)

Appeal from Lafayette Chancery Court; *Emon O. Mahoney,*
Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellees filed in the circuit court of Lafayette County a
petition for partition of certain lands, making appellants parties
defendant, and setting up that appellees and appellants owned
the lands sought to be partitioned as tenants in common, they
being the children and heirs of James T. Lester, deceased.

Appellants answered, setting up that James T. Lester dis-
posed of all his property by will, which they as the executors
had filed with the probate court of Lafayette County for probate;
that acting under the will they had paid the debts of the testator,
and had cared for the widow, and in doing so had incurred an
expense of $1,500, for which the estate was indebted; that the
will prescribed the manner in which the estate shall be disposed
of, inconsistent with partition thereof. They allege that the
matter should be referred to the probate court to be disposed of
according to the provisions of the will, and ask that the petition
be dismissed.

Appellees reply that at the time of filing their complaint
they understood and believed that the said James T. Lester died
intestate, and that they had no knowledge or information to the
contrary up to and for some time thereafter; that since filing of
this suit J. T. and N. T. Lester have filed and probated a will
of the said James T. Lester, and have qualified as executors
thereof; deny that the estate owed any debts, and deny that, in
having the widow cared for and provided for as per terms of
the will, said estate has incurred great expense, say, in the sum
of $1,500 or any other sum, that was and is a debt against the
estate; allege that the said Lester died on the 6th day of January,
1894, and that his widow died on the 26th day of July, 1900; that

during this long period of time defendants knew of the said will, and that the executors therein named secretly held same and refused and neglected to probate; that if the estate owed any debts, or became liable for any debts incurred by reason of having the widow cared for, the rights of the executors and creditors are barred as to the lands by laches and long lapse of time; that, under the provisions of said will, the widow took and held only a life estate in said lands; that at her death the land descended to plaintiffs and defendants in equal parts; that defendants N. T. and J. T. Lester have refused and neglected to partition said lands, as empowered under the will, and that they are now estopped to further interpose the power given them; that they are hostile to and prejudiced against the rights of plaintiffs, and that it would be unjust and inequitable, and highly prejudicial to their interests and rights, for them to make the partition, if willing now to so do; and pray for appointment of commissioners and partition.

At this juncture, by consent of all parties, the cause was transferred to the chancery court, and appellants filed an amendment to their answer, in which they state that, prior to death of James T. Lester, he devised and bequeathed to his wife, Elenor Lester, all his estate, both real and personal, as shown by the will attached and made exhibit to answer; that defendants J. T. and N. T. Lester, in effort to regard wish of father as expressed in said will, cared for their mother in her lifetime, and that J. T. Lester, being the only one of the executors who had money, supplied and maintained her in as comfortable manner as possible, and furnished her money and supplies as requested; that he kept an account of said expenditures, and files account as part of answer; says that it is a just debt against the estate, and is a lien on the property of said estate, and asks that the lands be sold for payment of the claim.

The will, omitting caption and conclusion, is as follows:

"1. I hereby constitute and appoint my two sons, towit: James T. Lester and Nathaniel T. Lester, to the sole executors of this my last will and testament, directing my executors to pay my just debts and funeral expenses and legacies hereinafter given out of my estate.

"2. After the payment of my just debts and funeral expenses, I give to my wife, Elenor Lester, my entire estate, towit, moneys, stock, and farm, for her sole use and support, and it is expressly understood that my entire estate is to be controlled and managed by my said executors, that is to say, James T. and Nathaniel T. Lester, or either of them; that they, or either of them, are to manage and control said farm, stock, and effects to the best of their judgment and ability for the use of my said wife as aforesaid.

"3. If my wife, Elenor Lester, should see proper, after my decease, to marry again, then in that case she shall have one hundred and sixty acres of land, to include the homestead, and one hundred and fifty dollars worth of property out of my estate, the balance to be disposed of as hereinafter provided.

"4. After the marriage of my wife, Elenor Lester, or death, if she should not marry, I direct that said executors shall advertise my entire property for sale, and, if it can be, agreeable with all my children, divide the same into such lots and parcels as shall give each one of my children an equal share of my property; if it can not be so divided in lots and shares, then they shall sell to the highest bidder, and the proceeds be equally divided between them all.

"5. It is expressly understood that my said executors, or one of them, in case of the death of the other, shall have full power, after said property is divided or sold as aforesaid, to execute deeds of conveyance which will have the force and effect as I could do were I alive and present; and, also, have power to sue and collect any debt which may be due and owing to me at the time of my decease.

"6. Now, it is to be expressly understood that it is my intention in this instrument that my executors shall use and control my effects, goods, chattels, moneys and real estate in such manner as to provide for my wife a comfortable and snug support as aforesaid, but all to be managed with prudence and economy and not spent indiscreetly, and that the remainder shall be divided equally among all my heirs, giving each an equal share."

The will was executed January 27, 1890, and was filed for probate January 8, 1906. The suit in partition was begun Jan-

uary 3, 1906. It was agreed that appellants and appellees were the heirs of James Lester, who died January 6, 1894; that Elenor Lester was the widow and mother of appellants and appellees; that James Lester owned the tract of land described in the petition for partition at the time of his death; that Elenor Lester, the widow, died July 31, 1900; that the will (as set out above) was not offered for probate until January 6, 1906; that it was duly probated in the Lafayette Probate Court April 16, 1906; that J. T. and N. T. Lester were appointed executors; that no inventory or appraisement has been made and filed by said executors, nor have they made any report or taken any further action in said estate since letters were granted them on the 16th day of April, 1906; that no claim or demand of any kind had been filed against said estate at that time, which was the 14th day of September, 1906.

N. T. Lester testified, in substance, that after the death of their father he and J. T. Lester took charge of the estate, real and personal, and managed and controlled same, acting as executors of the will. They had never given any account of the effects of the estate disposed of by them to the probate court.

J. T. Lester testified that the account that he had exhibited was correct; that the estate owed him a balance on the account of $727.54; that after his father's death he took charge of his estate, and managed and controlled it for his mother; that the proceeds from the products of farm and stock were not sufficient for his mother's support, and he used his own money to supply the deficiency. His mother was an invalid from his father's death, and during last three years of her life was not able to turn herself in bed. The personal estate consisted of three mules, about four cows and some yearlings; did not know how much money. His father prior to his death had received $500, but that went to pay debts and funeral expenses. There was some corn and plow tools and household and kitchen furniture. There were book accounts, which were old and out of date, a note on Dr. Henry for something over $100, which he tried to collect, but could not. He used the farm for his mother's benefit. She lived with him about two years and four months prior to her death, while his brother stayed at the old place. There was no memorandum of stock, cotton or other things kept. Had

his brother to sell them and used proceeds for his mother. When his mother lived on the old home place, his brother, N. T., his brother's daughter, a man by the name of Stinchcomb, a cook, and Lewis Grant, a hired hand, lived with her. His mother lived with him from 1897 or 1898 until her death in 1900. During this time Grant got most of the things charged to the estate, and the other part of the account was for things used by his mother at his house. He did not know what it required for the support of his mother, except as shown by the account. She drew a pension of eight dollars per month from the United States Government. The checks were cashed by him and his brother, N. T. Lester, and the amount turned over to his mother. He had never presented to the heirs the account against his mother. The husband of one of the heirs, Ethel Kirtley, told him that if he had an account it would have to take its course in law. The appellees never agreed for him to withhold any action or proceeding necessary to the enforcement of any claim or supposed claim he might have against the estate. It was never discussed. He had rented the place each year since his mother's death. He did so because the estate was indebted to him, and none of the heirs objected. Had been since mother's death about 25 acres in cultivation; had not rented by the acre. It is rented this year for $50. There is on the place a large two-story residence, but no fine orchard. Renters damaged orchard greatly by letting calves run on there. In 1900 proceeds of place used for mother; in 1901 gave rent of place for repairing cook room; in 1902 let Lewis Lester have it for repairing fences; in 1903 rented for bale of cotton, and divided among heirs, except Jessie Lester; in 1904 let Lewis Lester have it for bale of cotton; in 1905 rented it for $35. Considers his claim worth lands.

The chancellor found that the account of J. T. Lester was not supported by the evidence, and that he was barred by laches. The decree of the court was for partition of the lands, and this appeal was taken.

*Warren & Hamiter,* for appellants.

1. A fee is always presumed to be given in a will, if the land is burdened in such a manner and to such an extent that

a life estate may possibly be insufficient to bear the burden. 1 Dembitz on Land Titles, 98.

Taking into consideration the condition of the farm, the small income to be derived therefrom, the limited amount of personal property, the testator's expressed desire that the estate be appropriated to the widow's support, and that it be a "snug and comfortable" support, there can be no question that he intended to burden his entire estate to that end. J. T. Lester ought, therefore, to be reimbursed for the money and supplies furnished by him, out of the estate. 40 Ark. 175.

2. His delay of less than seven years in setting up his claim is fully and satisfactory explained. He is not barred by laches.

*Searcy & Parks*, for appellees.

1. There is no doubt of the jurisdiction of the chancery court. Kirby's Digest, § 739; 33 Ark. 727; 48 Ark. 386; 51 Ark. 80.

2. By the terms of the will, the widow was given a life estate in the entire property. No definite estate was given to her, but the property, real and personal, was given for her sole use and support to be managed and controlled by the executors for her, with remainder over to the heirs. 73 Ark. 425; 16 S. W. 712; 104 U. S. 291, 26 Law. Ed. 745; 95 Mo. 33.

3. If the widow only took a life estate, the executors were not authorized to burden the lands for her support, nor can the conclusion be drawn from the will that the testator so intended. No power of sale was conferred upon the executors, except in the event of her marriage or death, and not then, unless the lands, could not be equally divided. *Ubi supra;* 93 U. S. 326, 23 Law. Ed. 927; 13 Ves. 445; 6 Pet. 68; 36 Ill. 355.

4. J. T. Lester's claim is barred by laches. The right of creditors to enforce payment out of the lands must be exercised within a reasonable time. 37 Ark. 155; 47 Ark. 475; 48 Ark. 277; 54 Ark. 65; 56 Ark. 633; 63 Ark. 405; 70 Ark. 185; 73 Ark. 445.

WOOD, J., (after stating the facts.) 1. The chancery court had jurisdiction. Appellants and appellees were tenants in common (section 739, Kirby's Digest), and as such could go into chancery for partition. See section 5770, Kirby's Digest; *Pat-*

*ton* v. *Wagner,* 19 Ark. 233. The allegations made in appellee's petition and in the reply to the answer of appellants were sufficient, if true, to give the chancery court jurisdiction. The appellant, J. T. Lester, who had possession of the land, did not claim to have title in same or to be holding same adversely to any title or interest of the appellees in the land. His only contention was that the cause should be dismissed, and that the probate court should proceed to determine the matters in controversy. But this suit was begun before the will was filed for probate, and the chancery court, having jurisdiction to make partition, could proceed to adjudge and settle the question of the amount and validity of appellant J. T. Lester's claim, and, having taken jurisdiction of the cause for partition, it was proper for it to retain it to determine this issue.

It was shown that there were no debts against the estate of James Lester, deceased. Appellants, as executors of the will, had no power under the provisions of the will to create a debt against the estate of their testator in their own name and right, or in any other way, for the support and maintenance of their mother, the widow of James Lester, deceased. "The entire estate" was to be controlled and managed by the executors for the "use and support of the wife" of James Lester, but this did not give them the power to sell the real estate or to contract debts against the real estate that would result in its sale. The various provisions of the will, when construed as a whole, show that the intention of the testator was that the entire usufruct of the estate should go to provide for his wife "a comfortable and snug support." This intention is clearly set forth in the sixth and last paragraph of the will, where the testator expressly declares such to be his purpose. Appellants therefore had no claim against the estate of the deceased James Lester, and the court very properly refused to dismiss the cause for want of jurisdiction.

2. As we have shown, the purpose of the testator was to devise a life estate in the entire property, both real and personal, which he owned at the time of his death, to his wife for "her use and support." If the widow married again, the estate for life was defeated in all the property of the estate except the homestead and one hundred and fifty dollars worth of personal

property, as is shown by the 3rd paragraph of the will. In case of the defeasance of the life estate in all of the realty except the homestead and the one hundred and fifty dollars of personal property by the marriage of the widow, the executors were to sell the remainder, or, in case of the death of the widow, to divide the entire estate into lots and parcels, if it could be done by agreement among the heirs, so as to give them share and share alike; and, if it could not be done by consent, the executors were to sell the entire estate and divide the proceeds equally between them all. All of this shows that the widow did not get a fee in the real estate, and it follows that appellants had no claim which they could maintain against the estate as the property of the mother. For her estate in it ended at her death. That this is the proper construction of the will, see *O'Connor* v. *Rowland,* 73 Ark. 422; *Frank* v. *Unz,* 91 Ky. 621; *Giles* v. *Little,* 104 U. S. 291.

3. Even if the case were not settled by this construction of the will, we would not disturb the finding of the chancellor on the facts as to the lack of evidence to support the claim, and his finding as to laches. No court of chancery could sanction the methods pursued by the appellant J. T. Lester in this case to assert even a valid claim against the estate of his father or mother, and he would be barred by laches for not pursuing earlier the statutory remedies. Kirby's Digest, § 110.

On the facts the preponderance is in favor of the chancellor's finding that appellant's claim is not supported by the proof.

Decree affirmed.