## MORRIS *v.* DOSCH.

### 4-4677

Opinion delivered June 7, 1937.

*Owens & Ehrman,* for appellants.

*House, Moses & Holmes* and *Harry B. Solmson, Jr.,* for appellees.

McHANEY, J.  Appellees, sisters of the late Sam Louchheim, and beneficiaries under his will, brought this action against appellants, executors and trustees under said will, to enjoin them from (1) canceling and marking paid two promissory notes, the property of said estate, one executed by Harry Lasker in the principal sum of $6,000, and one by Henry Bullock in the principal sum of $500; (2) also to compel appellants to pay inheritance taxes out of the corpus of the estate; and (3) to enjoin them from amortizing the premium paid for Government bonds over the lifetime of the bonds and deducting this amortization fee from the amount of interest yielded by such bonds.  Appellants demurred to the complaint and the court sustained the demurrer as to item (1) above

and overruled it as to items (2) and (3). Both parties declined to plead further, and the court entered a decree accordingly, from which there is an appeal and a cross-appeal.

So much of the will, which is in the handwriting of the testator, as is deemed necessary to a determination of the issues will be set out, and there is no question raised as to its validity or as to its form. After impressing upon the trustees of his will that ''I want my requests carried out to the letter'' and directing the payment of his debts, etc., he said: ''My estate consists of about $90,000 as follows:'' then follows a list of assets including ''cash in vault $59,000 * * * mortgage, Henry Bullock, $500; * * * Harry Lasker note, $6,000.'' The will then provides: ''I want everything I own turned into cash, except the government bonds, then after paying expenses & what I owe, I want nothing but government bonds bought for same, 'only guaranteed bonds by the government' then I want all the interest money from said bonds paid to Mrs. Harry Lasker she to divide same with my sister Mrs. Wm. Dosch, in case either one should pass on, the one that is still living shall have the entire income for her lifetime, 'interest only' as I make disposition of principle after the death of my two sisters, but before all cash is turned into bonds, I want the following attended to.''

He then makes certain specific bequests which are to be paid before bonds are purchased and the will then provides: ''After the death of my two sisters I want my estate divided as follows:'' Then follows a long list of substantial bequests to churches, orphanages, hospitals, charitable institutions and individuals. Included in this list are: ''Harry Lasker (note I hold against him for $6,000. Same was for $13,000, 1st mtg. bonds I sold him for $7,000 (on 8th & Brdwy. property) this note I leave to Harry, mark same paid;'' ''Mtg. note I hold $500 against Henry Bullock Route 2, No. L. R. give this note to him or his heirs and marked paid a gift from me.'' The will concluded as follows: ''After all expenses, burial, Inheritance tax, etc., are paid I want the balance

of my Estate to be given to charitable Institutions here in Little Rock, Ark. I want included in this, one Colored and they are to share equally with the others, I want, Harry Lasker, Jr., Emmet Morris and the Rabbi at Cong. B'Nae Israel to pass an OK all Institutions. I want same equally divided among those you three select, if any of my Trustees' or Executors should die and if any cannot serve I want the remaining two to select a third, I always want the Rabbi of Cong. B'Nai Israel to act, no matter who he may be.

"I appoint Harry Lasker, Jr., Emmet Morris & Rabbi Sanders to act as Executors & Trustees and if Dr. Sanders should leave here I want the Rabbi who succeeds him to act—

"Reason I did not leave more to my nephew was because Harry will have plenty anyway, I want no one to go in morning for me."

The first question presented is the proper disposition of the Lasker and Bullock notes. We think the court correctly held that the appellants should cancel and surrender these notes. We see no real inconsistency in the will in this regard, or rather whatever inconsistency there is is more apparent than real. While the testator does express the want or desire to have "everything I own turned into cash," the language used in connection with the disposition of these notes, in the clause disposing of his property after the death of his sisters, shows conclusively that it was not the testator's intention that these notes should be converted into cash. With reference to the Lasker note, he said, "this note I leave to Harry, mark same paid." As to the Bullock note, he said: "give this note to him or his heirs and marked paid a gift from me." Now, if these notes should be sold to third persons to be converted into cash, then they could not be delivered to the makers marked paid, nor could the Lasker note be left to Harry and the Bullock note would not be a gift from the testator. The manifest intention of the testator was that these notes should be canceled and delivered to the makers by the trustees as a gift from him. As said in *Union National Bank* v. *Kirby,* 189 Ark. 369, 72 S. W.

(2d) 229, "* * * the general rule is that the paramount principle in the construction of wills is that the general intention of the testator, if not in contravention of public policy or of some rule of law, shall control; and such intention is to be ascertained from the language used as it appears from a consideration of the entire instrument. Words and sentences used are to be construed in their ordinary sense so as to arrive at the real intention of the testator. *Witten* v. *Wegman,* 182 Ark. 62, 30 S. W. (2d) 834; *Union Trust Co.* v. *Madigan,* 183 Ark. 158, 35 S. W. (2d) 349; *First National Bank* v. *Marre,* 183 Ark. 699, 38 S. W. (2d) 14; *Lavenue* v. *Lewis,* 185 Ark. 159, 46 S. W. (2d) 649.''

As to the inheritance taxes, the court directed appellants to pay such tax out of the corpus of the estate. In this we think the court was correct. It is in exact compliance with the will. It says: "After all expenses, burial, inheritance tax, etc., are paid, I want," etc., as copied above. The obligation to pay these taxes and expenses was not placed on appellees further than it might reduce the income to them from the estate. The direction comes in a sentence referring to expenses that came shortly following the death of the testator, such as burial, court costs, etc. The payment of the inheritance taxes could not be postponed until after the death of appellees and he had the right to direct its payment from the body of his estate.

We are also of the opinion that the trial court correctly held that the appellants had no power or authority to amortize the premiums paid in the purchase of Government bonds and deduct same from interest moneys accruing thereon. The testator was directing his funds to be invested in the safest securities, a foresight that inured to the benefit of the life *cestui* and the remaindermen. Just how much benefit to each would be difficult if not impossible to apportion. Moreover, the testator said in his will: "I want all the interest money from said bonds paid to Mrs. Harry Lasker, she to divide same with my sister, Mrs. Wm. Dosch, in case either one should pass on, the one that is still living shall have the entire income for her lifetime * * *." What he meant by "all

the interest money" and "the entire income" needs no explanation or construction. He meant they should have "all the interest money" and "the entire income" from the bonds, no matter whether bought at a premium or a discount. Suppose appellants have paid a premium for the bonds, and, before maturity, the life *cestui* die, and the bonds at that time are sold at a profit over the purchase price, the remaindermen get all the benefit. But whether a profit or a loss, the remaindermen can take only what the will gives them at the time and in the manner provided therein.

We find no error, and the decree is accordingly affirmed.