Jerry Lynn MORGAN et al *v.*
Reba GREEN

77-315                               562 S.W. 2d 612

Opinion delivered March 20, 1978
(In Banc)

*Eldridge & Eldridge,* for appellants.

*Lightle, Tedder, Hannah & Beebe,* for appellee.

DARRELL HICKMAN, Justice. This appeal questions
whether a clause in a will granted a mere life estate, or gave
the life tenant an absolute power of alienation. The

chancellor, after careful consideration, decided on summary judgment the will of Eva Morgan did not grant her son, Jeff Morgan, the power to sell sixty acres — it only gave Morgan a life estate. We disagree with the chancellor and reverse his decision.

The relevant portions of Morgan's will provided:

Section III: I give, devise and bequeath to my beloved son, Jeff Morgan, *a life interest in the real estate described herein with the right to mortgage, sell or in any manner to alienate the said property during his lifetime with remainder over* . . . .

Section IV: At the death of Jeff Morgan, *the remainder over is vested in the following persons* or their heirs and assigns as tenants in common . . .
(Emphasis added.)

Eva Morgan died in 1959 and her son took possession of sixty acres of land devised to him. In 1963, Jeff Morgan sold the land by warranty deed. He died in 1973, and appellee, Reba Green, who stood to have an interest in the sixty acres if it had remained unsold, filed suit to set aside the deed.

The case was decided on summary judgment for Green. The present owner brings this appeal.

It is our duty in interpreting documents to apply our best judgment consistent with certain rules of construction. We seek to find the intent of the testator. This intention is gathered from a consideration of the entire instrument. *Jackson* v. *Robinson,* 195 Ark. 431, 112 S.W. 2d 417 (1938); *Lawrence* v. *Lawrence,* 225 Ark. 500, 283 S.W. 2d 697 (1955). Words and sentences used in a will are to be construed in their ordinary sense so as to arrive at the real intention of the testator. *Morris* v. *Dosch,* 194 Ark. 153, 106 S.W. 2d 159 (1937). We do not consider, as a controlling factor, whether a power of sale is in the same clause as the grant of a life estate or in a separate clause. *Union & Mercantile Trust Co.* v. *Hudson,* 143 Ark. 519, 220 S.W. 820 (1920). Applying these rules of construction to Morgan's will we merely have to examine her words. Her son Jeff was granted a life estate "with the right to

mortgage, *sell, or in any manner to alienate the said property* during his lifetime . . . " This simply means that he was given the right to sell the real estate — not just his interest in the property. We pointed out in a similar case that such words would be meaningless if they did not grant the life tenant the power to sell the property. He already has the right to sell his interest. *Pearrow* v. *Vaden,* 201 Ark. 1146, 148 S.W. 2d 320 (1941).

We do not find the words "remainder over" in the will granted to Green a vested remainder interest in the property. The words simply provided for the disposition of the property if Morgan did not dispose of it during his lifetime.

It is not necessary for us to reach the other argument raised by the appellants since the decree is reversed and remanded with directions to enter a decree for the appellants.

Reversed.

FOGLEMAN and HOWARD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I dissent because I agree with the chancellor's careful analysis of our decisions on the question involved. I also agree with the careful, thorough analysis of our cases by the Hon. John E. Miller, the distinguished Judge (now Senior Judge) of the Western District of Arkansas, in *Bone* v. *United States,* 238 F. S. 97 (1965). The majority's categorical statement, that the phrase quoted simply means that the life tenant was given the right to sell, not his life estate, but the real estate, is simplistic and not supported by our decisions. *Pearrow* v. *Vaden,* 201 Ark. 1146, 148 S.W. 2d 320 cannot be viewed in isolation and there were factors involved in *Pearrow* not present here, as I will presently demonstrate.

In his opinion the chancellor stated that our cases reflect no inconsistency, but, to the contrary, disclose a uniformity of application of established rules of construction. That opinion so clearly demonstrates the correct rule and its correct application that I reproduce it, omitting introductory and concluding paragraphs, viz:

The Court begins with the proposition that, subject to some limitations upon restraints on alienation and other considerations of sound public policy, a testator may make such disposition of his property and impose upon it such conditions as to vesting of the gift as he deems proper. It is not necessarily the selection of words and phrases nor the sequence in which he uses them that governs. In every case the court seeks to determine and give effect to his intention as manifested by the will as a whole.

That this is the rule applied in this line of cases is clear from a reading of *Goolsby, Archer* and *Union Merchantile Trust. Goolsby* first announced the rule, *Archer* attempted to clarify it and *Union Merchantile Trust* should have put it to rest.

The confusion following the *Goolsby* decision appears to have resulted in part from lack of clarity (which the court admitted and attempted to explain in *Archer*) and in part from a difference in schools of legal thought at the time. At the time *Goolsby* was decided there were three distinct authorities on the subject. One line contended that upon the creation of a life estate, the testator could not in any case grant to the life tenant more than those words imply. A second line contended that whenever and however a power of disposition was granted a life tenant, the estate was, as a matter of law, one in fee simple. Still a third was persuaded that a testator could, by proper manifestation of intent, couple a life estate with a power of disposition, which, though not converting to fee simple, if exercised could defeat the estate of the remainderman.

There were many who thought that *Goolsby* committed the Court to the first of those lines of authority, i.e., that whenever a life estate was coupled with power of disposition, that power was so annexed to the life estate as to be limited to it. *Archer* made it quite clear that the court had not so intended "though it contained language which could be so interpreted." *Archer* also appears to make it clear that the court had in fact committed itself to the third of those schools of thought by

adopting through its approval of the rule of construction from *Giles* v. *Little,* 104 U.S. 291:

> It is contended that even conceding that the will gave the widow an estate for life, yet it conferred on her during widowhood the power to convey the fee, and she having so conveyed, the defendants in error who claim under her have good title. But the Court says, 'the authorities are averse and show that when a power of disposal accompanies a bequest of a life estate, *the power is limited to such disposition as a tenant for life can make,* unless there are other words clearly indicating that a larger power was intended.' " (Emphasis as shown in the *Goolsby* opinion.)

The *Archer* opinion explains *Goolsby* as applying that rule to the will before it and finding "no other words indicating that a larger power was intended." To the contrary, it appears that the court considered the coupling of the power and estate in one section was "indicative" of an intent to limit, which indication was, indeed, bolstered by subsequent restrictions placed on the widow's treatment of assets. The *Archer* opinion pointed out that the placing of the power in a separate paragraph of the will was an "indication" that the broader power was intended, otherwise no meaning could be attached to it. It was from the words and their position in the will that the Court found the "indication that a larger power was intended."

It should also be clear from the *Archer* decision that the supplying of emphasis in the *Goolsby* case was unfortunate, for it was the succeeding phrase which the court there was actually applying, and has applied in all subsequent cases brought to the Chancellor's attention.

*Archer* itself spawned two new misconceptions. By calling attention to the Court's comments in the *Goolsby* case to the positioning of the grant and power as "indication" of intent to limit that power, it led some to believe that as a matter of law the testator could not enlarge the life estate within the same clause even if

there was a clear manifestation of contrary intent and that any will in which the grant and power appeared in separate clauses, as a matter of law, extended the power.

Both were dispelled in *Union Merchantile Trust* v. *Moore [Hudson]*, 143 Ark. 519. The will before that court did contain the life estate and power of disposal in a single paragraph of the will. However subsequent paragraphs, by limiting the remainder interest to that part of the estate, "not disposed of" were held to supply "those other words clearly indicating that a larger power was intended." The Court there said:

> "It is contended that *Archer* v. *Palmer* was based on the fact that the life estate and power were not contained in the same clause. We cannot agree.
>
> "The Court by the cases cited shows that it intended to follow current authority on the question in this country which holds that when a whole will is considered and read together and shows that it was the manifest intention of the testator to give a life estate to the life tenant with the added power in the life tenant to dispose of the whole estate during his life time, and that power was exercised, and estate vests in those to whom the life tenant has granted it."

To the Chancellor it is clear from these cases that the court has consistently followed its initial approval of *Giles* v. *Little,* supra. In the *Goolsby* case, as a rule of construction, the coupling of the estate and power in one clause was an indication of intent to limit the power, which indication was not overcome by subsequent words indicating that the larger power was intended. In the *Archer* case, applying the rule of construction that each paragraph must be given some meaning if possible, the separation of the clauses containing the estate and power was an indication that the larger estate was intended, *there being no words in other clauses of the will manifesting a contrary intent.* In the *Mercantile Trust* case, unlike *Goolsby,* the indication drawn from inclusion of

both in the same clause was overcome by subsequent words indicating that the larger power was intended.

The will of Eva Morgan now before the Court is in essence a two paragraph will. In paragraph III she devises an estate for life to Jeff Morgan, coupling it with what appear to be broad powers of disposition. In paragraph IV she names the remaindermen to take the whole estate in remainder after the death of Jeff.

The Morgan will, unlike that in *Goolsby* or *Douglass* v. *Sharp,* does not contain additional clauses which make the indication to be drawn from the coupling of the estate and power in a single clause more manifest, nor, as in *Union Merchantile Trust* words which overcome that indication in favor of a finding of contrary manifestation. It simply grants the life estate and power in a single clause and by subsequent words grants what appears to be the entire estate in remainder. There is nothing in Eva Morgan's will which manifests an intention to grant a larger power than that which a life tenant could make.

In the absence of a more recent pronouncement, it would appear that the rule of construction first announced in *Giles* v. *Little,* cited with approval in *Goolsby, Archer* and all subsequent cases is applicable here, i.e. the coupling of a power of disposition to the grant of a life estate limits the disposition to that which a life tenant can make, in the absence of subsequent words manifesting an intention to grant a larger power. There are simply no such words here. There is no attempt to limit the estate of the remaindermen to the unexercised power nor inference to be drawn by the use of separate clauses. Paragraph IV purports to grant the entire estate in remainder.

The Court cannot supply words, but is limited in its function to interpreting the words used by the testator. The guidelines layed out by our precedents admit of only one interpretation of this will. As was said by the court in *Piles* v. *Kline* [Fields v. Kline], 161 Ark. 418:

"Wills must be read in their entirety in order to

give effect if we may, to all the language the testator has employed. If that language is clear, we have only to declare the intention there expressed. If, however, the will is ambiguous or the intention of the testator is not clear, we must invoke the aid of settled rules of construction with reference to which the will is said to have been made, although the testator may have been wholly ignorant of the rules. The application of these rules may in some instances operate to defeat the intention of the testator, but if so, the fault is his and lies with him in failing to clearly express his intention."

The Chancellor therefore construes this will as having granted to Jeff Morgan only a life estate and that the powers conferred were limited to that estate. Upon his death the estate conveyed to the defendants herein terminated and plaintiff's right of entry as one of the remaindermen arose.[1]

We have never heretofore departed from the rule adopted in *Patty* v. *Goolsby,* 51 Ark. 61, 9 S.W. 846, from *Giles* v. *Little,* 104 U.S. 291, 26 L. Ed. 745 (1881). See *Douglass* v. *Sharp,* 52 Ark. 113, 12 S.W. 202; *Lester* v. *Kirtley,* 83 Ark. 554, 104 S.W. 213; *Archer* v. *Palmer,* 112 Ark. 527, 167 S.W. 99. This case is the first departure and, since the *Giles* rule is a rule of property in Arkansas, the effect of this departure can be devastating to the attorneys and testators who have drawn wills in reliance on our decisions.

The explanation that "remainder over" does not vest a remainder will come as a surprise, and perhaps severe shock to the hundreds of will draftsmen to whom "remainder over" has always done just what the majority says that it does not do. "Remainder over" is commonly and universally used to vest a remainder after the termination of a life estate or to describe a remainder so vested. See, e.g., *Ollar* v. *Roy,* 212 Ark. 682, 207 S.W. 2d 313; *Thoma* v. *Coats,* 205 Okla. 688, 240 P. 2d 736 (1952); *Smith* v. *Frost,* 144 Ga. 115, 86 S.E. 235

---

[1]See *Patty* v. *Goolsby,* 51 Ark. 61, 9 S.W. 846; *Archer* v. *Palmer,* 112 Ark. 527, 167 S.W. 99; *Union Merchantile Trust* v. *Moore,* 143 Ark. 519, 220 S.W. 820; *Douglass* v. *Sharp,* 52 Ark. 113, 12 S.W. 202; *Fields* v. *Kline,* 161 Ark. 418, 256 S.W. 355.

(1915); 4 Thompson on Real Property (Perm. Ed.) 737, 738, § 2204; 12 Am. Jur. Legal Forms, 132, 146, 147, Titles, Forms 77, 166.29, 166.78, 166.79; 5 Nichols, Cyclopedia of Legal Forms, Annotated 97, 99, § 5.354, 5.362; Modern Legal Forms, Title, § 3253; 4 Page on Wills 671, 673, 676, §§ 37.38, 37.42. The expression was so used in *Goolsby* and in *Archer*.

It is true that the statement was made in *Pearrow* v. *Vaden*, 201 Ark. 1146, 148 S.W. 2d 320, that a life tenant had the right to sell his life estate without any grant of that power by the will. But that statement is taken out of context and was not the sole basis for the decision. It was only one circumstance. The pertinent will clauses in *Pearrow* were:

Second: To my beloved wife, Dona Pearrow, I give and bequeath *all of my remaining property* of whatever kind, real, personal and mixed and of whatever nature during her lifetime with the right to dispose of *any or all of said property* in the event that her financial condition or health make it necessary to do so.

Third: To each of my children, Mamie P. Vaden, Charlie Pearrow, A. J. Pearrow, Jr., Walter Pearrow, Roy Pearrow, and Julian Pearrow or to the heirs of such as may die before me, I give and bequeath the sum of one dollar in cash to be paid out of any property left by me at my death.

Fourth: *At the death of my wife,* Dona Pearrow, I direct that *all property remaining* from my estate be divided among my children, Mamie P. Vaden, Charlie Pearrow, A. H. Pearrow, Jr., Walter Pearrow, Roy Pearrow, and Julian Pearrow as follows, to-wit:

"That to my daughter, Mamie P. Vaden, I give and bequeath one-fourth (¼) of all of the property *remaining undisposed of at the death of my wife,* Dona Pearrow, and to my sons, Charlie Pearrow, A. J. Pearrow, Jr., Walter Pearrow, Roy Pearrow, and Julian Pearrow, I give and bequeath the reminaing three-fourths (3/4) of my property *as remains unsold or undisposed of at the death of my wife,* Dona Pearrow, share and share alike, the heirs of

any such sons who may have died in the meantime to receive whatever interest their father would have received in this estate had he been living. [Emphasis added.]

We first distinguished *Goolsby* and *Douglas* v. *Sharp,* supra thus:

\*\*\* The cases of *Patty* v. *Goolsby,* 51 Ark. 61, 9 S.W. 846, and *Douglass* v. *Sharp,* 52 Ark. 113, 12 S.W. 202, relied upon by counsel for the defendant are not applicable. There is nothing in either case to indicate that the testator intended to give the life tenant the absolute power to dispose of the fee in the estate. Such intention is clearly indicated by the unrestricted power of disposal expressly granted by the second clause of the will under consideration, and this view is materially strengthened when we consider the language in the first part of the third clause. [The above was quoted from *Union & Mercantile Trust Co.* v. *Moore,* supra.]

Now, Pearrow's will does not grant to the widow the absolute right to convey the fee title under any and all circumstances. There is imposed a condition which must exist before this power may be exercised, that is, "that her financial condition or health make it necessary so to do."

This is a condition not so uncertain that it may not be definitely determined, as was the question whether the widow would remain unmarried, the condition upon which the widow in the case of *Douglass* v. *Sharp,* supra, was allowed to convey. The will there construed provided that "in the event that she (the widow) marries, then all of my property, real and personal estate, notes and accounts shall go to my children now living or who may be at the time of my wife's death or marriage, to be divided equally between them, share and share alike." In other words, the power in that case was too contingent to be enforceable, as it was always dependent upon the widow remaining unmarried.

The statement which the majority relies on must be read in context. We said:

It is not essential here to determine whether one, to whom a life estate has been conveyed and upon whom a power to sell the remainder has been conferred, has the ultimate right to determine whether the condition has arisen under which the power may be exercised, for the reason that in the decree from which is this appeal, where the remaindermen were present, it has been found and was determined, that the life tenant's financial and physical condition made it necessary for her to sell her estate, and that power was granted her by the decree, but her right to sell was limited by the decree to her life estate.

We think the proper construction of the will does not thus limit the interest which the widow may convey. Had she been given a life estate without any power to convey, she could have sold that estate. We think the title the widow may convey is not confined to her life estate, but covers the fee title to so much of the property as may be subject to the power. If the will conferred the right only to sell the life estate, the power is meaningless, as she had the right otherwise to sell her life estate, *and the provisions of the fourth paragraph for the division of all property remaining at the death of the widow would be equally meaningless.*

*Paragraphs 2 and 4 of the will must be read together and when so read effect may be given to them only by holding that it was the testator's intention that his children should divide among themselves, in the proportions indicated, any of the devised property which the widow had not conveyed in her lifetime for the permissible purposes, because that — and that only — would be the "property remaining."* [Emphasis added.]

"Remainder over" is not, and cannot be, synonymous with "property remaining." The majority has made it say what was said in a whole paragraph in the Pearrow will.

This case is not controlled by *Union & Mercantile Trust Co.* v. *Moore,* 143 Ark. 519, 220 S.W. 820, either.[2] The will

---

[2]The style of this case in the Arkansas Reports is *Union Mercantile Co.* v. *Hudson.* This seems to be erroneous, as the *Hudson* case appears as 220 S.W.

clauses construed were:

> Second. I give, bequeath and devise *all the rest and residue of my estate owned by me at the time of my death,* real, personal and mixed to my mother, Charlotte D. Turner, to have, hold, use and enjoy during her natural life, it being my desire that *she shall have the absolute right to sell or incumber it without any restrictions whatever.*

The first part of clause three of the will reads as follows:

> Upon the death of my mother, *the title to all my property,* real, personal and mixed, *undisposed of by her,* as well as any of it which remains by conversion into other property, shall vest in John M. Moore, Henry D. Parker and William B. Smith, as trustees, or in such of them as are then living.

We said:

> The second clause of the will in express terms bequeaths and devises all the rest and residue of the estate of the testatrix to her mother, "to have, hold, use, and enjoy during her natural life, it being my desire that she shall have the absolute right to sell or incumber it without any restrictions whatever." This gives to the mother of the testatrix a life estate and an added power of disposal of the whole estate. It contemplates a possibility that a portion of the property may remain undisposed of under the power of disposal granted to the life tenant. This construction of the second clause is *in harmony with the provision in the first part of the third clause of the will, which provides that upon the death of the mother the title of all the property undisposed of by her* shall vest in John M. Moore, Henry D. Parker, and William B. Smith, as trustees. Other clauses of the will define the trust. [Emphasis added.]

Again *Goolsby* and *Douglass* were appropriately distinguished, thus:

---

465 and has no bearing on the subject. It was unpublished in the Arkansas Reports. See 144 Ark. 642.

The cases of *Patty* v. *Goolsby,* 51 Ark. 61, 9 S.W. 846, and *Douglass* v. *Sharp,* 52 Ark. 113, 12 S.W. 202, relied upon by counsel for the defendant, are not applicable. There is nothing in either case to indicate that the testator intended to give to the life tenant the absolute power to dispose of the fee in the estate. Such intention is clearly indicated by the unrestricted power of disposal expressly granted by the second clause of the will under consideration, and this view is materially strengthened when we consider the language in the first part of the third clause.

It should be noted that when the two clauses here are read together and the proper connotation of the words "remainder over" are used, this will is decidedly different. They are:

## III

I give, devise and bequeath to my beloved son, Jeff Morgan, a *life interest* in the real estate described herein with the right to mortgage, sell, or in any manner to alienate *the said property* during his lifetime with *remainder over* to the *persons described in the following paragraph.*

## IV

At the death of Jeff Morgan, the *remainder over* is vested in the following persons, . . .

It is obvious by now, that I would affirm the decree.

I am authorized to state that Mr. Justice Howard joins in this opinion.