ESTATE OF JESSE E. McMILLAN, DECEASED, MARY E. McMILLAN, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10378–78.    Filed January 29, 1981.

*Charles C. Owen,* for the petitioner.
*Patrick E. McGinnis,* for the respondent.

OPINION

IRWIN, *Judge*: Respondent determined a deficiency of $359,300.35 in the estate tax of the Estate of Jesse E. McMillan. Due to a concession, the sole issue is whether under section 2056[1] the estate is entitled to a marital deduction in excess of $42,136.

All of the facts have been stipulated. These facts together with the exhibits attached thereto are incorporated herein by this reference.

Jesse E. McMillan died on July 14, 1975, in Gurdon, Ark. Mary E. McMillan, the decedent's surviving spouse and duly qualified executrix of the Estate of Jesse E. McMillan, was granted letters testamentary by the Probate Court of Clark County, Ark., on September 11, 1975.

Mary E. McMillan was a resident of Gurdon, Ark., at the time the petition in this case was filed. The Federal estate tax return for the Estate of Jesse E. McMillan was filed by Mrs. McMillan with the Internal Revenue Service Center, Austin, Tex.

The decedent was survived by his wife, two sisters, five

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended.

nephews, and five nieces. His last will and testament, executed on or about March 18, 1955, provided as follows:

I, J. E. McMillan, residing in Gurdon, Ark. in the County of Clark being of sound mind and disposing memory do make, ordain, publish, and declare this to be my Last Will and Testament hereby revoking all former Wills and Codicils by me made.

I, J. E. McMillan here by Will everything that I have to my wife, Mary Ethel (Conn) McMillan for so long as she may live.

I wish to request that all property, money, money from life insurance, Stocks and Bonds or anything of value be used by her to the best of her ability for as long as she may live.

I wish to request that any financial favors that she may extend to any member of her family that like amount be extended to some member of my family that may need it most.

I wish to request that at her death the cashier of the Clark County Bank, Gurdon, Ark. and Charlie McMillan be appointed as Executors of the balance of the Estate which was left to my wife by me, J. E. McMillan.

I wish to request that the balance of the estate be sold for cash within a period not to exceed twenty four months and the following division be made at that time. Divide the total proceeds into six equal parts: One part to Hazel Conn Ewing; one part to Jewel Edward Conn; one part to Charlie C. McMillan: one part to Hattie McMillan Taylor: one part of [sic] Mecie McMillan Taylor: One part to Rosie McMillan Pruitt. In event that Rose McMillan Pruitt is not living at that time the proceeds is to be divided into five equal parts and given to the above mentioned five heirs. In event either of the above mentioned five heirs are not living at that time their part is to be divided equally to their living children.

I wish to request that any money or anything of value that any member of my family or any member of my wife's family may have received from my wife during her life time after my death be deducted from their part of the estate and be equally divided among all the heirs. I wish to request that my wife Mary Ethel McMillan keep a record of all donations or loans to any member of my family or to her family and same be filed with this will the first of each and every year during her life time.

Lastly, I make constitute and appoint my wife Mary Ethel McMillan to be the Administratrix of this Last Will and Testament, and serve without bond.

IN WITNESS, WHEREOF, I have hereunto subscribed my name and affixed my seal the eighteenth of March, in the year of Our Lord, One Thousand Nine Hundred and Fifty five.

The estate tax return filed by Mrs. McMillan (hereinafter sometimes petitioner) reflected a gross estate of $1,870,991 and

an adjusted gross estate of $1,798,526. Stocks and bonds in the estate were valued at $1,822,605[2] as of the date of death. Bonds owned by the estate were producing almost $80,000 of annual income, some of which was exempt from income tax under section 103. Stock owned by the estate consisted mainly of utility issues and other established corporations. Property held jointly by the decedent and his wife, amounting to $15,785, and insurance proceeds of $26,351, passing directly to the surviving spouse, were included in the gross estate. Taking the position that all of the decedent's property passed to the surviving spouse, the estate claimed one-half of the adjusted gross estate as a marital deduction. Thus, the claimed marital deduction amounted to $899,263.[3]

In his notice of deficiency respondent determined that the estate is entitled to a marital deduction of $42,136.[4]

Section 2056(a) provides that the value of the taxable estate shall, except as limited by section 2056(b) and (c), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse which is includable in determining the value of the gross estate. The terminable interest rule embodied in section 2056(b) mandates that no deduction shall be allowed where, on the lapse of time, on the occurrence of an event or contingency or failure thereof, an interest passing to the surviving spouse will terminate or fail, and (1) an interest in such property passes from the decedent to any person other than the surviving spouse or such spouse's estate (for less than an adequate consideration in money and money's worth), and (2) by reason of such passing, such person may possess or enjoy any part of the property after the termination or failure of the interest passing to the surviving spouse. Mere life estates constitute terminable interests (sec.

---

[2]This figure does not include $19,893 of accrued interest on bonds owned by decedent at the date of death.

[3]Petitioner now claims that the marital deduction should be increased to $909,209.50 as a result of the uncontested increase of $19,893 in the gross estate for accrued interest on bonds.

[4]Respondent's allowance of a marital deduction of $42,136 is based on a determination that only the following interests which passed to the surviving spouse qualify for the deductions:

Property held jointly by decedent and wife ... $15,785
Insurance proceeds .................................. 26,351
Total ............................................... 42,136

20.2056(b)–1(b), Estate Tax Regs.), and such interests do not qualify for the marital deduction by virtue of section 2056(b)(1)(A) and (B).

Where a surviving spouse is entitled to a life estate in property coupled with a general power of appointment over the property, the terminable interest rule does not disallow a deduction for the interest passing to the spouse. Sec. 2056(b)(5).

Respondent maintains that under the Will of Jesse E. McMillan, Mary E. McMillan, decedent's surviving spouse, received a mere life estate with no power over the principal, thus constituting a nondeductible terminable interest. Alternatively, respondent argues that the surviving spouse was granted a life estate with a power, but not a general power of appointment as described in section 2056(b)(5).

Petitioner contends that decedent bequeathed to his surviving spouse a life estate with an unqualified and unrestricted power of disposition. It is argued that this power is tantamount to a general power of appointment, and therefore, the interest passing to the surviving spouse meets the requirements of section 2056(b)(5) and is thus deductible.

The dispute in this case centers on the proper construction of the last will and testament of Jesse E. McMillan. Principles of Arkansas law must guide us in our quest to define the legal interests which were created under the will, and the Federal taxing statute will then determine the tax consequences of the interests so created. *Helvering v. Stuart*, 317 U.S. 154, 162 (1942); *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940).

The paramount principle in will construction is that the intention of the testator, as gleaned from the entire instrument, shall govern. *Morgan v. Green*, 263 Ark. 125, 562 S.W.2d 612 (1978); *Lawrence v. Lawrence*, 225 Ark. 500, 283 S.W.2d 697 (1955); *Cross v. Manning*, 211 Ark. 803, 202 S.W.2d 584 (1947). Words and sentences used in a will are to be construed in their ordinary sense so as to arrive at the real intention of the testator. *Morgan v. Green, supra*; *Morris v. Dosch*, 194 Ark. 153, 106 S.W.2d 159 (1937). We believe that the most reasonable construction of the Will of Jesse E. McMillan indicates that the testator's intent was to leave his surviving spouse a life estate in his property with no power over its disposition.

Since the parties agree that the surviving spouse was granted a life estate in the decedent's property, the dispute more

narrowly focuses on whether the life estate so granted was coupled with a power of appointment, and if so, whether such power was a general power of appointment.

The parties are also in agreement that nowhere in the will did Jesse E. McMillan expressly grant an unlimited power of disposition over corpus to the life tenant. Petitioner contends that such a power is to be implied from the will and that a power so implied is as effective as a power specifically expressed. While we most assuredly agree that express and implied powers are on equal footing (*Johnson v. Lehr*, 192 Ark. 1004, 96 S.W.2d 20 (1936)), we do not believe that any power of invasion or disposition over the principal of the estate was implied in the instant case.

After clause 2 of the will of Jesse E. McMillan grants Mary a life estate in the decedent's property, clauses 3, 5, and 6 provide in pertinent part:

I wish to request that all property, money, money from life insurance, Stocks and Bonds or anything of value be used by her [i.e., Mary] to the best of her ability for as long as she may live.

I wish to request that at her death the cashier of the Clark County Bank, Gurdon, Ark. and Charlie McMillan be appointed Executors of the balance of the Estate which was left to my wife by me, J.E. McMillan.

I wish to request that the balance of the estate be sold for cash within a period of twenty four months * * *

Petitioner impliedly suggests that the words "I wish to request" are merely precatory, thus evincing an intent that Mary have outright control of the corpus, and emphasizes that the word "balance" (clauses 5 and 6), coupled with the phrase "be used by her to the best of her ability" (clause 3), implies a power of disposition in the surviving spouse.

Whether words are merely precatory or impose an imperative obligation must be determined by the language actually used, the context, and the consideration of the will as a whole. *Cross v. Manning, supra*; *Wooldridge v. Gilman*, 170 Ark. 163, 279 S.W. 20 (1926). Directions are held to be mandatory when such words direct, command, or require something to be done, and are considered precatory when such words merely express a hope or wish of the testator, leaving it to the discretion of another whether or not to carry out the wish. *Patterson v. Polk*, 229 Ark. 272, 317 S.W.2d 286, 292 (1958); 1 Page, Wills, sec. 4.19 (Bowe-Parker rev. 1960). We hold that the expression "I wish to

request" used in the will in the instant case is testamentary and not a naked expression of hope. Decedent's will consisted of eight clauses. Clauses 3 through 7 all begin with "I wish to request." We are hard pressed to find that after disposing of property in clause 2, the dispositive scheme of the testator had thus ended only to be followed by five expressions of hope which constituted the overwhelming majority of the instrument. To so hold seems plainly illogical.

Similarly, we do not think it reasonable to infer a power of invasion over principal from the testator's use of the word "balance" in clauses 5 and 6. In *Dillen v. Fancher*, 193 Ark. 715, 102 S.W.2d 87, 88 (1937), testator's will provided as follows:

> Second, I give, devise and bequeath to my wife * * * and my father * * * during their lifetime all of my property of every kind including Real Estate and Personal property, monies, notes and accounts and all other property that I might have at the time of my death and direct that they use said Estate to the best interest and according to their own judgment.
> Third, after the death of my said wife * * * and * * * my father, I give and bequeath to my two children * * * all property both Real and Personal that belongs to my Estate at the time of the death of my said wife and father to them and their heirs and assigns forever, share and share alike.

In a suit to enjoin the wife from selling items of personal property of the estate, the court held that a mere life estate was created, and accordingly, the life tenants were not vested with any power of sale so as to convert the corpus of the estate to their own use. The court also noted that the phrase "use the estate to the best interest and according to their own judgment" would have been unnecessary if the bequest was to be absolute. Thus, it is evident that the phrase "all property * * * that belongs to my Estate at the time of the death of my said wife and father" envisoned a vested interest in the remaindermen which could not be defeated by the life tenants.

We believe that the language of the will in the instant case is even more susceptible to a finding of a mere life estate with no power to consume principal than was the language in *Dillen*. In *Dillen*, the life tenants were directed to use the estate "to the best interest and according to their own judgment." The will of Jesse E. McMillan does not specifically address the needs or best interests of Mary, but rather mandates that property be used by Mary "to the best of her ability." We think this latter phrase more reasonably connotes a skill, i.e., the management of funds,

than it does an unfettered right to dispose or consume the property in any manner that Mary pleases.

Furthermore, it has been held that the right to use and control does not vest absolute title. *Alexander v. Alexander*, 262 Ark. 612, 561 S.W.2d 59, 65 (1978); *Blanton v. First National Bank of Forrest City*, 142 Ark. 404, 219 S.W. 305 (1920). The right to use and enjoy is an ordinary incident of a life estate. *Alexander v. Alexander, supra.* Thus, we do not think that the word "used" employed by decedent in clause 3 ("be used by her to the best of her ability") raises a necessary implication that the life tenant has a power of invasion over principal.

Petitioner, in asserting that the phrase "balance of the estate," as used in clause 6 of the will, implies a power of disposition over principal, relies on *Johnson v. Lehr, supra,* and *Weeks v. Weeks*, 211 Ark. 132, 199 S.W.2d 955 (1947). In *Johnson,* the following language was held to create an implied power of sale in the primary legatee:

I give, devise, and bequeath unto my beloved wife * * * all of my property * * * for her own personal use as long as she may live and at her death *should there be any property or moneys left* after the payment of her funeral expenses and debts are paid it is my desire that the residue be divided equally * * * [96 S.W.2d at 20; emphasis supplied.]

In *Weeks,* the following will provision was viewed as bestowing upon the life tenant an absolute power of sale and disposition:

I give and bequeath unto my beloved wife, * * * all the rest, residue and remainder of my estate * * * for her own personal use so long as she shall live, and at her death I direct that *whatever remains* of said bequest be divided * * * [199 S.W. 2d at 956; emphasis supplied.]

Both *Johnson* and *Weeks* are distinguishable from the case at bar. The phrases "should there be any moneys or property left" and "whatever remains" clearly imply that the rights of remaindermen are contingent upon the life tenant's death prior to the depletion of the estate principal by the life tenant through use, sale, or otherwise. It is within the context of a remainderman's contingent interest that Arkansas cases have stated that a conveyance by a life tenant to a third party might actually defeat the rights of a remainderman. *Alexander v. Alexander, supra; Pearrow v. Vaden*, 201 Ark. 1146, 148 S.W.2d 320 (1941); *Archer v. Palmer*, 112 Ark. 527, 167 S.W. 99 (1914). However,

where a testator uses the term "balance" connoting that something will indeed be left over,[5] and then proceeds to mandate a detailed accounting system wherein advancements to remaindermen are taken into consideration (see will clause 7), we think it unreasonable to assume that an absolute power of disposition is implied.

Considering the above discussion, we believe that the power to extend financial favors to family members granted to Mary by clause 4 of the will relates to moneys derived from income of the estate principal. We derive support for this conclusion from the fact that the income earned on bonds owned by decedent was to be almost $80,000 per year, much of which would be exempt from tax under section 103. Additionally, decedent owned a significant number of shares of stock in utility companies and other established corporations which would in all likelihood result in Mary's receipt of significant dividend income. However, even assuming arguendo, that such a power to grant favors related to the principal of the estate, the marital deduction would likewise be unavailable to the estate for the reason that such a power is expressly limited so as to benefit only family members, and therefore, the interest passing would still not satisfy the mandate of section 2056(b)(5).

In summary, we hold that Mary E. McMillan received a life estate in the property of the decedent, Jesse E. McMillan, with no power over the disposition of the principal of the estate. The interest thus passing to Mary therefore does not qualify for the marital deduction. Accordingly, we need not address respondent's alternative argument that any power of invasion which may be inferred from the will was not tantamount to a general power of appointment.[6]

*Decision will be entered for the respondent.*

---

[5]See *Duvall v. United States*, 246 F. Supp. 378 (E.D. Ky. 1965).

[6]See *McGehee v. Commissioner*, 260 F.2d 818 (5th Cir. 1958); *Batterton v. United States*, 406 F.2d 247 (5th Cir. 1968), cert. denied 395 U.S. 934 (1969). Also compare *Estate of Pipe v. Commissioner*, 241 F.2d 210 (2d Cir. 1957), affg. 23 T.C. 99 (1954), cert. denied 355 U.S. 814 (1957), with *Tyler v. United States*, 468 F.2d 959 (10th Cir. 1972).